**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 11 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

BILLIE LEON RICHMOND,

  Petitioner-Appellee,

v.

LARRY EMBRY,
Superintendent/Warden,

  Respondent-Appellant.

No. 96-1380

---

**Appeal from the United States District Court**
**for the District of Colo.**
**(D.C. No. 95-B-1866)**

---

Patrick D. Butler of Lamm, Freeman & Butler, LLC, Boulder, Colorado, for
Petitioner-Appellee.

Clemmie P. Engle, Senior Assistant Attorney General (Gale Norton, Attorney
General, with her on the briefs), Denver, Colorado, for Respondent-Appellant.

---

Before **BRORBY, LOGAN** and **HENRY**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

The United States District Court for the District of Colorado granted Mr. Richmond's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and reverse.

**I.**

In 1992, following a jury trial in Boulder, Colorado, Mr. Richmond was convicted of two counts of sexual assault on a child by one in a position of trust and was sentenced to two consecutive sixteen-year terms of imprisonment. During trial, the twelve-year-old victim testified Mr. Richmond had engaged in sexual intercourse with her on several occasions. This testimony was corroborated by evidence of her consistent out-of-court statements. The victim's testimony was also supplemented by medical evidence the victim had "multiple healed lacerations ... in the hymen" consistent with sexual intercourse.

During the defense's case, the defense attempted to introduce testimony from the victim's mother that she found condoms in the victim's dresser and that she had concerns regarding a neighborhood boy who would visit the victim. The mother had repeatedly asked the boy to leave and had found him in the victim's bedroom. Under Colorado's rape shield statute, evidence of "specific instances of the victim's prior or subsequent sexual conduct, opinion evidence of the victim's

-2-

sexual conduct, and reputation evidence of the victim's sexual conduct" is presumed irrelevant. Colo. Rev. Stat. § 18-3-407(1) (1986 & Supp. 1996). However, excepted from the presumption of irrelevance is evidence of the victim's sexual conduct with the actor, or "[e]vidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or any similar evidence of sexual intercourse offered for the purpose of showing that the act or acts charged were or were not committed by the defendant." Colo. Rev. Stat. § 18-3-407(1), (b). Unless the proffered evidence falls into one of the exceptions, a party must adhere to certain procedures in order to overcome the presumption of irrelevance.[1]

---

[1] The procedures of Colo. Rev. Stat. § 18-3-407(2)(a-e) are as follows:

(a) A written motion shall be made at least thirty days prior to trial, unless later for good cause shown, to the court and to the opposing parties stating that the moving party has an offer of proof of the relevancy and materiality of evidence of specific instances of the victim's prior or subsequent sexual conduct, or opinion evidence of the victim's sexual conduct, or reputation evidence of the victim's sexual conduct, or evidence that the victim has a history of false reporting of sexual assaults which is proposed to be presented.

(b) The written motion shall be accompanied by an affidavit in which the offer of proof shall be stated.

(c) If the court finds that the offer of proof is sufficient, the court shall notify the other party of such and set a hearing to be held in camera prior to trial. In

-3-

The parties do not dispute the defense failed to adhere to these procedures before its attempt to admit the testimony. Rather, Mr. Richmond attempted to introduce the testimony during the trial without following the prescribed procedures. After considering the proffered evidence, the trial court determined that under the statute, the mother's testimony was presumptively irrelevant and, was, therefore, inadmissible under Colorado's rape shield statute. Colo. Rev. Stat. § 18-3-407.

On direct appeal, Mr. Richmond argued the trial court improperly excluded the evidence; the Colorado Court of Appeals affirmed the conviction rejecting Mr. Richmond's claim the proffered evidence was excepted from the rape shield's

---

such hearing, the court shall allow the questioning of the victim regarding the offer of proof made by the moving party and shall otherwise allow a full presentation of the offer of proof including, but not limited to, the presentation of witnesses.

(d) An in camera hearing may be held during trial if evidence first becomes available at the time of the trial or for good cause shown.

(e) At the conclusion of the hearing, if the court finds that the evidence proposed to be offered regarding the sexual conduct of the victim is relevant to a material issue to the case, the court shall order that evidence may be introduced and prescribe the nature of the evidence or questions to be permitted. The moving party may then offer evidence pursuant to the order of the court.

presumption of irrelevance and its notice and hearing requirements. *People v.*

*Richmond*, No. 92CA1918 (Colo. Ct. App. Nov. 18, 1993) (unpublished), *cert.*

*denied*, No. 94SC43 (Colo. 1994). Specifically, the Colorado Court of Appeals

held the trial court properly found the proffered evidence was not a specific

instance of the victim's prior sexual conduct tending to show the acts charged

were not committed by defendant. *Id.* Therefore, the court held, the proffered

evidence was "irrelevant and inadmissible." *Id.*

In his habeas petition filed in the district court, Mr. Richmond argued the

trial court's exclusion of the proffered evidence violated his following rights: his

right to compulsory process and a fair trial under the Sixth Amendment of the

federal Constitution and Article II of the Colorado Constitution; and his right to

equal protection and due process under the federal Constitution's Fourteenth

Amendment, and Article II of the Colorado constitution.[2]

---

[2] From our review of the record before us, it appears Mr. Richmond failed to exhaust the majority of these claims in state court. However, because Mr. Richmond's failure to exhaust state remedies does not deprive this court of jurisdiction to consider the claims' merits, and because the government seems to have conceded the exhaustion issue, we will consider the merits of Mr. Richmond's claims despite his failure to exhaust these claims. *Granberry v. Greer*, 481 U.S. 129, 131 (1987); *Hoxsie v. Kerby*, 108 F.3d 1239, 1242 (10th Cir. 1997), *petition for cert. filed*, (U.S. Jun. 9, 1997) (No. 96-9364).

The magistrate judge recommended the district court grant the petition. Specifically, the magistrate judge concluded the trial court's exclusion of evidence violated Mr. Richmond's Sixth Amendment right to confrontation. The magistrate judge reasoned because the excluded evidence was offered to rebut the medical testimony, and the inferences flowing from that testimony -- that the defendant was the only one who could have caused the victim's hymen lacerations -- the evidence the mother found condoms and had difficulty keeping her daughter away from a boy was "highly relevant" and material to Mr. Richmond's defense such that its exclusion violated Mr. Richmond's rights under the Sixth Amendment's Confrontation Clause.

After reviewing the magistrate judge's recommendations *de novo*, the United States District Court for the District of Colorado found "[t]hrough misapplication of Colorado's Rape Shield Statute, petitioner was denied his Sixth Amendment right to confrontation through the exclusion of proffered relevant evidence," and granted Mr. Richmond's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## II. Standard of Review

In reviewing the district court's grant of Mr. Richmond's habeas petition, we accept the district court's factual findings unless they are clearly erroneous, and we review the court's legal conclusions *de novo*. *Houchin v. Zavaras*, 107 F.3d 1465, 1469 (10th Cir. 1997).

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), amended the standards for reviewing state court judgments in habeas proceedings by increasing the deference federal courts are to give to state court factual findings and legal determinations.[3] 28 U.S.C. § 2254(d); *Houchin*, 107 F.3d at 1470. The government urges us to apply the amended version of 28 U.S.C. § 2254(d) to Mr. Richmond's petition even though it was filed prior to the amendment's effective date. Prior to the amendment, federal courts disregarded the state courts' legal conclusions and

---

[3] The amended 28 U.S.C. § 2254(d) now states:

> An application for a writ of habeas corpus ... shall not be granted ... unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States ....

reached independent judgments on issues presented to them. *Lindh v. Murphy*, 96 F.3d 856, 861 (7th Cir. 1996) (en banc), *cert. granted*, 117 S. Ct. 726 (1997) *& judgment rev'd on other grounds*, 117 S. Ct. 2059 (1997). In *Lindh v. Murphy*, 117 S. Ct. 2059 (1997), the Supreme Court held Congress did not intend the new, more discretionary standards as reflected in the amended 28 U.S.C. § 2254(d) to apply to petitions filed prior to the amendment's effective date, *id.* at 866; consequently, we apply the pre-amended version of 28 U.S.C. § 2254 to Mr. Richmond's petition.

### III. State Claims

Mr. Richmond challenges his convictions based on the Colorado constitution, and in granting Mr. Richmond's petition, the district court relied, in part, on the trial court's "misapplication" of Colorado's rape shield statute. However, relief under 28 U.S.C. § 2254 does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Matthews v. Price*, 83 F.3d 328, 330 (10th Cir. 1996). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 67-68. Therefore, we do not consider Mr. Richmond's claims based on violations of state law.

## IV. Constitutional Rights at Issue

Mr. Richmond challenges the trial court's exclusion of the mother's testimony the victim owned condoms and had a frequent male visitor. Both the magistrate judge and the district court characterized the violation as one under the Confrontation Clause of the Sixth Amendment.

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution to confront the witnesses against him or her; the "'main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 315 (1974)). As we have held, a "'defendant's right to confrontation may be violated if the trial court precludes an entire relevant area of cross-examination.'" *United States v. Begay*, 937 F.2d 515, 520 (10th Cir. 1991) (quoting *United States v. Lonedog,* 929 F.2d 568, 570 (10th Cir.), *cert. denied*, 502 U.S. 854 (1991)).

However, as the record reveals, Mr. Richmond did not attempt to cross-examine any prosecution witness, including the victim, about the victim's condoms or her male visitor. Further, the defense did not attempt to cross-examine the victim as to whether she was sexually active, nor did the defense

attempt to cross-examine the medical witnesses as to whether the hymenal damage could have resulted from sexual intercourse with someone besides Mr. Richmond. Instead, during the defense's case-in-chief, Mr. Richmond attempted to introduce testimony regarding the condom and the visitor through his own witness. Therefore, the trial court could not possibly have precluded an "entire area of cross-examination."

Mr. Richmond's claim here is not that he was denied his constitutional right of confrontation, but rather that he was denied the right to present defense-witness testimony. As explained below, this is a right arising not under the Sixth Amendment's Confrontation Clause but is instead one arising under the Fifth and Fourteenth Amendment right to due process and the Sixth Amendment right to compulsory process. Consequently, the exclusion of the mother's testimony did not violate Mr. Richmond's right of confrontation.

To breathe life into his Confrontation Clause claim, Mr. Richmond argues the trial court's exclusion of the proffered testimony "denied Mr. Richmond's counsel the opportunity to explore the reasonable cross-examination areas which could have logically been derived from presenting the evidence." However, review of the record reveals after the trial court excluded the proffered testimony,

Mr. Richmond did not attempt any cross-examination that "logically [could have] been derived from presenting the evidence," nor did he make an offer of proof as to what "areas" he would have examined had the trial court allowed the excluded testimony. We simply cannot find the trial court violated Mr. Richmond's Confrontation Clause rights where the trial court in no way foreclosed the defendant from confronting or cross-examining the witnesses; Mr. Richmond cites no authority supporting his contrary position. Mr. Richmond's Confrontation Clause rights have not been transgressed here.

We therefore turn to Mr. Richmond's claims the exclusion of the evidence violated his Sixth Amendment rights to compulsory process and a fair trial, and his Fourteenth Amendment right to due process.[4] A defendant's right to due process and compulsory process includes the right to present witnesses in his or her own defense. *Washington v. Texas*, 388 U.S. 14, 18-19 (1967). "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense .... This right is a fundamental

---

[4] As stated, Mr. Richmond also claimed in his petition the exclusion of testimony violated his equal protection rights under the Fourteenth Amendment. However, Mr. Richmond failed to argue how the testimony's exclusion violated his equal protection rights in his petition, in the district court, or in his brief before this court. Consequently, we will not consider this argument. *Abercrombie v. Catoosa*, 896 F.2d 1228, 1231 (10th Cir. 1990) (failure to argue issue in appellate brief constitutes waiver).

element of due process of law." *Id.* at 19. By necessity, the right of a defendant to present witnesses in his or her defense includes the right to have the jury hear the testimony those witnesses are called to give. *See Rock v. Arkansas*, 483 U.S. 44, 55 (1987).

In presenting such testimony, the defendant must comply with established rules of evidence and procedure as required by the state "to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). However, the state may not arbitrarily deny a defendant the ability to present testimony that is "'relevant and material, and ... vital to the defense.'" *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (quoting *Washington*, 388 U.S. at 16). While a state may not apply a rule of evidence mechanistically to defeat the ends of justice, in appropriate circumstances, the defendant's right to present relevant testimony may "'bow to accommodate other legitimate interests in the criminal trial process.'" *Michigan v. Lucas*, 500 U.S. 145, 149 (1991) (quoting *Rock* 483 U.S. at 55 and *Chambers*, 410 U.S. at 295).

The Supreme Court has held legitimate state interests behind a rape shield statute such as giving rape victims heightened protection against "surprise,

harassment, and unnecessary invasions of privacy" may allow the exclusion of relevant evidence if the state's interests in excluding the evidence outweigh the defendant's interests in having the evidence admitted. *Id* at 150-52; *Stephens v. Miller*, 13 F.3d 998, 1002 (7th Cir.) (en banc), *cert. denied*, 513 U.S. 808 (1992). These considerations are in addition to the more traditional concerns of prejudice, issue and jury confusion, which usually guide a trial court's evidentiary rulings. *See Begay*, 937 F.2d at 522 (exclusion of relevant evidence under Fed. R. Evid. 412 and 403 unconstitutional where probative value of the evidence far outweighed its danger for prejudice); *United States v. Galloway*, 937 F.2d 542, 549 (10th Cir. 1991) (exclusion of relevant evidence would be proper if danger of prejudice, confusion of the issues, or misleading the jury substantially outweighed the evidence's probative value). Consequently, to determine whether a defendant was unconstitutionally denied his or her right to present relevant evidence, we must balance the importance of the evidence to the defense against the interests the state has in excluding the evidence.

Additionally, to establish a violation of the right to compulsory process, a fair trial or due process, a defendant must show a denial of fundamental fairness: "'In order to declare a denial of [fundamental fairness] we must find that the absence of that fairness fatally infected the trial; the acts complained of must be

of such quality as necessarily prevents a fair trial.'" *Valenzuela-Bernal*, 458 U.S. at 872 (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)). "It is the materiality of the excluded evidence to the presentation of the defense that determines whether a petitioner has been deprived of a fundamentally fair trial." *Maes v. Thomas*, 46 F.3d 979, 987 (10th Cir.), *cert. denied*, 115 S. Ct. 1972 (1995). Evidence is material if its suppression might have affected the trial's outcome. *Valenzuela-Bernal*, 458 U.S. at 868. In other words, material evidence is that which is exculpatory -- evidence that if admitted would create reasonable doubt that did not exist without the evidence. *Id.*; *see also United States v. Parker*, 72 F.3d 1444, 1451 (10th Cir. 1995) (government's duty to protect evidence is limited to "material" evidence--evidence that is exculpatory).

In sum, then, to determine whether the trial court's exclusion of the proffered evidence violated Mr. Richmond's right to present witness testimony, we first examine whether that testimony was relevant, and if so, whether the state's interests in excluding the evidence outweighed Mr. Richmond's interests in its admittance. This inquiry includes an examination as to whether more traditional factors such as prejudice, issue and jury confusion weigh in favor of excluding the testimony. Second, we examine whether the excluded testimony

was material -- whether it was of such an exculpatory nature that its exclusion affected the trial's outcome.[5]

### A. Relevance Versus State Interests

Mr. Richmond argues the testimony the victim owned condoms and had a male visitor was relevant and material to his defense because it tended to show the following:  1) the victim "was not a sexually naive/innocent girl"; 2) because the victim was sexually active, she could detail a sexual incident even though she had not had one with Mr. Richmond; 3) someone other than the Mr. Richmond was the cause of the victim's hymenal damage.

---

[5] The concurrence takes issue with this test, suggesting instead a balancing test combined with harmless error review.  However, as explained above, we are faced here with a compulsory process, rather than a confrontation clause challenge.  In such a context, the Supreme Court has dictated a "materiality," or outcome-driven, test.  Therefore, we are compelled to apply it.  *Compare Van Arsdall*, 475 U.S. at 680 ("[T]he focus of the confrontation clause is on individual witnesses) *with Valenzuela-Bernal*, 458 U.S. at 867-68 ("[In] the area of constitutionally guaranteed access to evidence, we find [the] materiality requirement more than borne out....  [I]mplicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial.'" (Quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976)).  Further, the concurrence suggests we employ the materiality test only when a significant governmental interest is involved.  We find nothing in *Van Arsdall* and *Valenzuela-Bernal* indicating the Court fashioned the disparate tests due to the governmental interest at stake; instead, the Court focused on the constitutional challenge involved.

Each of these arguments assumes the condom and visitor evidence was relevant to show the victim was sexually active. At best, however, this evidence was only marginally relevant to show the victim was sexually active. The defense could offer no testimony the victim had actually used the condoms, or that the victim had engaged in sexual intercourse with the male visitor.[6] Rather, the defense attempts to introduce evidence to create an inference the victim was sexually active based on conjecture and speculation. We refuse to equate a twelve-year-old girl's possession of condoms, or her friendship with a boy, with sexual activity.

It is also noteworthy the defense was not foreclosed from cross-examining the medical witnesses, or from introducing testimony to suggest the hymenal damage was due to a source other than Mr. Richmond. Specifically, the defense cross-examined the doctors as to whether the victim's use of tampons could have caused the hymenal damage. While one of the doctors, Dr. Jenny, testified such damage could not occur from tampon use, another doctor, Dr. Shepherd, testified on cross-examination the hymenal damage was consistent with tampon use. The defense also introduced testimony by the victim's mother that the victim used

_____

[6] We note the defense did not attempt to call the male visitor as a witness to inquire as to any sexual activity between himself and the twelve-year-old victim.

-16-

tampons. Consequently, while the defense was precluded from admitting testimony regarding the condoms and the victim's male visitor, it was not precluded from admitting testimony providing an alternative explanation of the victim's hymenal damage. We hold, however, in regard to the proffered testimony, without further evidence the victim actually used the condoms or had intercourse with the visitor, the excluded testimony was only marginally probative as to whether the victim was sexually active prior to the incidents involving Mr. Richmond.

We now turn to the state's interests involved. As stated, whether a state may limit a defendant's right to present relevant evidence depends upon the competing weights of the interests of the state and the defendant. Here, the trial court relied on Colorado's rape shield statute in excluding the evidence. Specifically, the trial court held that under the statute, because the evidence of the condoms and male visitor did not point to a "specific instance" of sexual conduct tending to exonerate the defendant, the evidence was presumptively irrelevant and excludable. Colo. Rev. Stat. § 18-3-407.

As the Supreme Court has said, rape shield statutes "represent[] a valid legislative determination that rape victims deserve heightened protection." *Lucas*,

500 U.S. at 150. Colorado's rape shield statute was enacted for the following purposes: to protect the victims of sexual assault from humiliating and embarrassing public "fishing expeditions" into their sexual conduct; to overcome victims' reluctance to report incidents of sexual assault; and to protect victims from "psychological or emotional abuse in court as the price of their cooperation in prosecuting sex offenders." *Colorado v. McKenna*, 585 P.2d 275, 278 (Colo. 1978).

The evidence the defense sought to introduce is certainly of the kind Colorado's rape shield statute was enacted to exclude; allowing the defense to inquire as to the condoms and the male visitor would not only have subjected the victim to embarrassment and humiliation, but could have had the effect of deterring future victims from reporting sexual assaults.

Further, under the Colorado rape shield law, a defendant is allowed to present presumptively irrelevant evidence if it follows the prescribed notice and hearing requirements, requirements that are meant to provide the victim with protection against "surprise, harassment, and unnecessary invasions of privacy." *Lucas*, 500 U.S. at 150; Colo. Rev. Stat. § 18-3-407. Here, the defense failed to follow the requirements. While the trial court did not explicitly rely on the

defense's failure to follow the rape shield statute's notice and hearing requirements in excluding the evidence, the existence of the requirements and the defendant's failure to follow those procedures are germane to our weighing of interests in this case. Here, where the evidence was only marginally probative as to the victim's sexual activity, the state had an interest in protecting both the prosecution and the victim from surprise and unnecessary invasions of privacy due to the defendant's failure to follow the rape shield statute's procedures.

In sum, on one side of our scale rest the state's interests in protecting sexual assault victims and in encouraging such victims to cooperate with the prosecution -- interests that are both legitimate and important. On the other side of the scale rests the defendant's interest in admitting testimony that is, at best, only marginally relevant. Additionally, the defense was not foreclosed from introducing testimony suggesting an alternative cause of the victim's hymenal damage. Consequently, we hold the balance of interests in this case weigh heavily in favor of the state and, therefore, in favor of the testimony's exclusion.

**B. Materiality**

In addition to balancing the state's interests against the accused's interests, in determining whether the exclusion of testimony violated a defendant's Sixth

Amendment rights to compulsory process and a fair trial and the Fourteenth Amendment right to due process, we must determine whether the defendant was denied a "fundamentally fair" trial; therefore, looking at the record as a whole, we inquire as to whether the evidence was of such an exculpatory nature that its exclusion affected the trial's outcome. *Valenzuela-Bernal*, 458 U.S. at 868. Here, due to the evidence's marginally relevant nature, and in the context of the record as a whole, we hold the excluded testimony was not constitutionally material.

First, the proffered testimony was not the type that if believed would have, by necessity, exculpated the defendant. *See, e.g., Chambers,* 410 U.S. at 302 (trial court's exclusion of evidence another person had confessed to the crime at issue violated due process). Rather, even if believed, the proffered testimony only showed the victim possessed condoms and a male friend. It did not establish the victim engaged in consensual sexual relations. Additionally, the inference the defense claims the medical testimony raised -- that Mr. Richmond was the sole cause of the hymenal damage -- was rebutted through some of the testimony regarding the victim's tampon use.

Second, in light of the evidence of Mr. Richmond's guilt, "in the context of the entire record," we are not persuaded the proffered testimony, even if admitted,

would have created a reasonable doubt that did not exist without the evidence. *Valenzuela-Bernal*, 458 U.S. at 868 (quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976)). The victim testified in great detail that Mr. Richmond sexually assaulted her on three separate occasions. The victim's friend, a police investigator, and an investigator of sexual abuse from the local county all testified the victim had relayed to them Mr. Richmond had assaulted her, and had, in the case of the investigators, relayed substantially similar accounts of the incidents. Even the victim's mother, who testified on behalf of Mr. Richmond, corroborated the victim's testimony in at least two of the three incidents by placing the victim and Mr. Richmond together at the same times, places, and circumstances as those the victim described. All this additional testimony reinforced the credibility of the victim's testimony. We hold, when evaluated in the context of the entire record, the omission of the testimony the victim's mother found condoms in the victim's drawers and had tried to keep the victim away from a male visitor would not have been sufficient to create a reasonable doubt, and its omission did not affect the trial's outcome.

As we have concluded, the evidence was, at most, only marginally relevant to whether the victim was sexually active. Any conclusion the victim was sexually active due to her possession of condoms and a male friend is merely

conjectural. Also, in the context of the entire record, the testimony's exclusion did not affect the trial's outcome. The testimony was not constitutionally material; therefore, its exclusion did not render the trial so fundamentally unfair as to deprive Mr. Richmond of his rights to compulsory process, a fair trial, and due process under the Sixth and Fourteenth amendments.

For the proposition the testimony's exclusion deprived him of "critical" constitutional rights, Mr. Richmond relies heavily on *Begay*, 937 F.2d at 522. In *Begay*, a direct criminal appeal, the defendant was convicted of aggravated sexual abuse of an Indian child in Indian country. 937 F.2d at 517. During trial, the government introduced evidence to show the defendant had sexual intercourse with his girlfriend's eight-year-old daughter. *Id.* at 518. A doctor testified regarding a medical exam performed on the victim, which revealed hymenal symptoms consistent with intercourse. *Id.* at 519.

Before trial, the defendant filed a motion to offer evidence pursuant to Fed. R. Evid. 412, the federal version of a "rape shield law," seeking to introduce proof involving the victim's past sexual activity with John Jim, a man who had pleaded guilty to sexually assaulting the victim. *Begay*, 937 F.2d at 519. After a hearing, the district court denied the motion. *Id.* Specifically, the district court

excluded the doctor's proffered testimony it was impossible to determine from the exam alone whether hymenal damage was caused by the defendant, or by John Jim. *Id.* In connection with this testimony, the victim's brother would have testified he saw Mr. Jim assault the victim on three separate occasions in the summer immediately preceding the occasions at issue in the trial. *Id.* The district court also excluded an offer of proof the investigator questioned the victim about the John Jim incident contrasting it to the incident involving the defendant. *Id.* Specifically, the investigator's question to the victim was whether the defendant did the same thing to her as John Jim, "as far as -- you know, getting inside her and that type thing," to which the victim's answer was no. *Id.* The district court also precluded the defense from cross-examining the victim regarding her experiences with John Jim. *Id.* at 520-21.

On appeal, the defendant argued the district court's exclusion of the evidence violated his Sixth Amendment Confrontation Clause rights by restricting his ability to cross-examine the victim and the doctor about the victim's prior sexual contact with John Jim. *Id* at 520. The defendant argued he was denied the opportunity to explain the physical evidence of the victim's condition, and was denied the opportunity to cross-examine the victim to explore whether she was confusing the incidents with John Jim with the contact at issue during the trial.

*Id.* This court held the district court's exclusion of the testimony violated the defendant's Confrontation Clause rights. *Id.* at 523. The court held the evidence the victim had been sexually assaulted previously by someone else was relevant, and sufficiently material and vital to the defense as to be "constitutionally required" under Fed. R. Evid. 412(b)(1). *Id.*

However, the facts of *Begay* stand in significant contrast to those in the present case and, consequently, *Begay* does not dictate our decision here. First, in *Begay*, unlike the case before us today, the defense had powerful evidence the victim had been sexually assaulted by someone other than the defendant. That evidence included testimony by the victim's brother he witnessed the prior offender sexually assault the victim on three separate occasions in the summer immediately preceding the incident at issue in trial, the prior offender's guilty plea to the victim's prior rape, and the victim's own admissions someone else had sexual intercourse with her. *Id.* at 519. Such evidence, the court held, was relevant, and was not outweighed by its potential for prejudice. *Id.* at 523.

Here, however, the defense has no such evidence the victim had engaged in sexual intercourse prior to the incidents involving Mr. Richmond. Rather, Mr. Richmond attempts to rely on testimony the victim owned condoms and had a

male friend to establish the victim was sexually active. As stated, we find this inference too speculative and conjectural to be more than marginally probative as to the victim's sexual activity. Unlike *Begay*, where the defense had substantial evidence, including eyewitness testimony, that someone other than the defendant had sexually assaulted the victim, here, Mr. Richmond can point to no such evidence. Additionally, unlike the evidence in *Begay*, where the potential for prejudice did not outweigh the evidence's relevance, here, as stated, the evidence is only marginally relevant, and is substantially outweighed by the state's interests in its exclusion. Consequently, *Begay* does not guide this case's outcome. We hold the trial court's exclusion of the proffered testimony in this case did not violate Mr. Richmond's constitutional rights.

We therefore **REVERSE** and **REMAND** to the district court with instructions to deny Mr. Richmond's petition for habeas corpus and for such other and further action as may be consistent with this opinion.

96-1380, <u>Richmond v. Embry</u>, Henry, J., concurring in the result.

I concur in the result reached in the majority decision and write separately only to note that I would apply a different test in analyzing the exclusion of the proffered testimony in this case. My analysis, however, leads me to the same result as the majority.

As recognized by the majority, the central question in this case is whether the exclusion of petitioner's evidence violated his Sixth Amendment right to compulsory process and Fourteenth Amendment right to due process. In analyzing whether these constitutional rights were violated by the exclusion of Mrs. Richmond's testimony regarding the victim's condoms and male visitor, the majority creates a two-part, outcome-oriented test derived largely from <u>United States v. Valenzuela-Bernal</u>, 458 U.S. 858 (1982). The majority's inquiry asks (1) whether the evidence was relevant, and if so, whether the state's interests in excluding it outweighed the defendant's interests, and (2) whether the evidence was constitutionally material--that is, whether the proffered testimony would have "exculpated the defendant" or "would have created a reasonable doubt that did not exist without the evidence." <u>See</u> Op. at 20.

In contrast to the majority's approach, I would apply a more traditional relevancy/state interests balancing test, combined with a harmless error appellate review to determine whether the exclusion of the proffered testimony violated Mr. Richmond's compulsory process and due process rights. This balancing test

would require us to inquire whether the excluded testimony is relevant and material to the defense, and if the testimony is relevant and material, whether legitimate state interests substantially outweigh the defendant's interest in presenting the testimony. See Wood v. Alaska, 957 F.2d 1544, 1549-50 (9th Cir. 1992) (adopting this balancing test to analyze the exclusion of defendant's evidence in a rape case). If, based on the foregoing test, we find that a constitutional violation has occurred, then we would determine on appeal whether the trial court's exclusion of the testimony constituted harmless error.

I believe this balancing test/harmless error review is consistent with the Supreme Court's approach for analyzing a defendant's rights to present the testimony of his own witnesses, see Rock v. Arkansas, 483 U.S. 44, 55-56 (1987), and to cross-examine prosecution witnesses, see Delaware v. Van Arsdall, 475 U.S. 673, 678-82 (1986)--both of which focus on the testimony of the "particular witness, not on the outcome of the entire trial." Id. at 679-80.

On the other hand, the majority's outcome-oriented test resembles the Court's approach for analyzing the rights to interview a witness whom the government has deported, see Valenzuela-Bernal, 458 U.S. at 872-74, to receive effective assistance of counsel, see Strickland v. Washington, 466 U.S. 668, 694 (1984), and to obtain exculpatory evidence from the prosecution, see United States v. Bagley, 473 U.S. 667, 681-83 (1985); see also, Tom Stacy & Kim

Dayton, Rethinking Harmless Constitutional Error, 88 Colum. L. Rev. 79, 120 (1988) ("[The Court's reasoning in Delaware v. Van Arsdall] implies that courts should eschew reliance on a strict outcome-oriented prejudice test whenever a defendant asserts a right based on the confrontation clause or the compulsory process clause, which also speaks of 'witnesses.'").

The distinction between these two tests is that the majority's creates a much higher "materiality" threshold when the defendant seeks to introduce testimony on direct examination--a test which it presumably would not apply when the defendant seeks to cross-examine a prosecution witness. I, on the other hand, would apply this more stringent test only in those cases in which a more significant governmental interest is at stake, for example, the Executive Branch's constitutional responsibility to execute Congress's immigration policy which was at issue in Valenzuela-Bernal. See 458 U.S. at 872-73.

As the Supreme Court explained in Crane v. Kentucky, 476 U.S. 683 (1986), regardless of "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Id. at 690 (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)). This right to present a defense encompasses a defendant's right to call witnesses whose testimony is

"relevant and material to the defense." See Washington v. Texas, 388 U.S. 14, 23 (1967). The Court has provided that "the right to present relevant testimony . . . 'may, in appropriate cases, bow to accommodate other legitimate interest in the criminal trial process.'" Rock, 483 U.S. at 55 (quoting Chambers v. Mississippi, 410 U.S. 284, 295 (1973)). Within this framework, the Court has recognized that a state has a legitimate interest in protecting rape victims against unwarranted invasions of privacy and harassment regarding their sexual conduct. Michigan v. Lucas, 500 U.S. 145, 149-50 (1991).

Applying this test to the facts of this case, I arrive at the same conclusion as the majority. I find the testimony regarding the condoms and the visiting boy to be both relevant and material, in that it relates to the victim's sexual activity and attempts to offer an alternative explanation for the prosecution's strong inference that Mr. Richmond is the only individual responsible for the victim's physical injury. However, like the majority, I would conclude that the probative value of this testimony is outweighed by the state's interest in excluding evidence which poses a danger of unfair prejudice and confusion of the issues and in protecting rape victims from invasions of privacy and sexual stereotyping. The state's interests here are heightened by the defendant's failure to meet the notice requirements of the statute, see Lucas, 500 U.S. at 153 ("Failure to comply with [the notice] requirement may in some cases justify even the severe sanction of

preclusion."), and to elicit testimony on cross-examination as is thoroughly explained by the majority.

Therefore, though I perhaps see the case as closer than does the majority, I would also reverse the district court's grant of Mr. Richmond's habeas corpus petition. The district court, having more facts at its fingertips, was right about the relevancy and materiality of the evidence. My disagreement with the district court comes in its evaluation and weighing of the competing interests.

Though I reach the same result as the majority, I think the difference in our approaches could be very significant in other cases. The majority's "constitutional materiality" prong unduly interferes with the defendant's right to present a defense by failing to focus on the particular witness, and in effect, calling upon the district court--which at that time has not heard all of the evidence--to conduct a "harmless error" review at trial. Admittedly, my approach might tend to let more evidence in; but the standard of relevance under the Federal Rules of Evidence "is a liberal one." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 587 (1993). Wide latitude on cross-examination and limiting instructions are also available to the district court to later minimize the impact of this evidence.

Finally, I would also note that even if we assumed the state's interests here were not paramount, on appeal I would apply harmless error, much as the majority

does in its "constitutional materiality" test, to reverse the district court's grant of the writ.