**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**


The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**JULY 13, 2023**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  38604-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| ELISHA JOHN YOUNG, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Elisha Young appeals his conviction for attempting to elude a police vehicle.  He contends that the trial court wrongly sustained an objection on "ultimate issue" grounds when his defense lawyer attempted to elicit testimony about whether Mr. Young was driving safely—evidence relevant to whether, while attempting to elude, he drove his vehicle in a reckless manner.  Alternatively, he argues that the sustaining of the objection deprived him of his constitutional right to present a defense.

The trial court's evidentiary ruling was an abuse of discretion, but it was harmless.  The constitutional challenge is not to an evidentiary rule, but to an erroneous ruling, so the *Hudlow*[1] balancing test is not helpful in determining whether the ruling violated Mr.

---

[1] *State v. Hudlow*, 99 Wn.2d 1, 659 P.2d 514 (1983).

No. 38604-0-III
*State v. Young*

Young's right to present a defense.  Instead, we examine whether the excluded evidence was "material," as provided by *State v. Smith*, 101 Wn.2d 36, 41-42, 677 P.2d 100 (1984), and as "materiality" is defined by *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867-68, 102 S. Ct. 3440, 73 L. Ed. 2d 1193 (1982).  Mr. Young fails to demonstrate that in the context of the entire record, the jury's consideration of his opinion that he drove safely would have created a reasonable doubt about guilt.  We affirm.

### FACTS AND PROCEDURAL BACKGROUND

On an afternoon in May 2021, Deputy John Knight was patrolling in Stevens County in a fully marked patrol truck.  While driving southbound on U.S. Highway 395, he noticed a white Toyota Corolla driving toward him that did not have a front license plate; after it passed, it appeared to be lacking a rear license plate as well.  Deputy Knight made a U-turn to investigate.

When a vehicle is traveling at the posted speed limit, the deputy is ordinarily able to catch up with it following a U-turn in a short period of time.  In this case, Deputy Knight was not able to close the distance, leading him to conclude that the Corolla "was traveling much faster than the speed limit."  Rep. of Proc. (RP) at 106.

The deputy saw the Corolla leave the highway at Greenwood Loop Road, so he took that exit as well.  Once on Greenwood Loop, he saw no sign of the Corolla, however.  Up to this point, the deputy had not activated the lights or sirens on his patrol truck.

2

No. 38604-0-III
*State v. Young*

Deputy Knight thought it most likely the Corolla had turned off Greenwood Loop to the Old Abandoned Highway, and he drove that way for a stretch before turning around and driving back to Greenwood Loop. There, a citizen flagged him down and provided information that caused the deputy to take his search for the car westward on Greenwood Loop, toward its intersection with Hoffman Road.

As he approached the intersection with Hoffman, he saw the Corolla traveling northbound on Hoffman, also approaching the intersection. As soon the deputy saw it, he activated his lights and siren, and, according to the deputy, the driver of the Corolla just as quickly made a U-turn at the intersection and headed back in the direction from which it came.

Deputy Knight turned onto Hoffman and followed the Corolla, trying to catch up with it. Hoffman Road is a two-lane dirt road, narrower than Greenwood Loop, that starts straight, then makes a significant turn, and winds somewhat thereafter. The deputy lost sight of the Corolla as it went around the first bend. Although he could not see the Corolla, it was kicking up dust, so Deputy Knight was confident it had not left Hoffman and he continued his effort to catch up with it.

When Deputy Knight emerged from the cloud of dust through which he had been driving, he saw the Corolla parked on the left hand side of the road, in front of a gate, with its driver's side door open. The driver, who turned out to be Elisha Young, was running away, according to the deputy. When Deputy Knight stepped out of his truck

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38604-0-III
*State v. Young*

and yelled at him to stop, Young did, and walked back toward him. In one of Mr.

Young's hands was a puppy, which he placed on the ground.

The deputy placed Mr. Young under arrest and secured him in his patrol truck.

Mr. Young was thereafter charged with attempting to elude a police vehicle.

The prosecution proceeded to a one-day jury trial. The only witnesses called were

Deputy Knight for the State and Mr. Young, who testified in his own defense.

The prosecutor questioned Deputy Knight about the events leading to Mr. Young's

arrest, the deputy's experience as a patrol officer, his ability to assess vehicle speeds, and

his training and experience with the safety hazards presented by a high-speed pursuit.

Deputy Knight testified that Mr. Young's driving on the day of the pursuit created several

safety hazards. He testified that there were not a lot of residences on the stretch of

Hoffman Road covered during the pursuit, but they had passed an estimated six

driveways. Had a vehicle been entering Hoffman, there could have been a collision. He

testified that he recognized skid marks on the dirt roadway, a sign that Mr. Young had

been traveling at a high rate of speed, losing traction, and sliding through corners. He

explained why he could be certain, from the fact that he was unable to catch up, that Mr.

Young had been driving at an excessive speed. Defense counsel did not object during

any of this testimony.

In the defense case, Mr. Young testified that on the day of his arrest he was

traveling to visit a friend on Hoffman Road. He said he had not noticed Deputy Knight's

4

No. 38604-0-III
*State v. Young*

patrol truck on U.S. Highway 395, or when he left the highway, or as he drove west on Greenwood Loop Road.

From Greenwood Loop, Mr. Young testified that he turned onto Hoffman and drove to his friend's house, only to discover his friend was not there. He therefore turned around and was traveling back toward Greenwood Loop when he received a phone call from his parents telling him that his friend had returned. He disputed Deputy Knight's testimony that he made his U-turn at the intersection; according to Mr. Young, he made the U-turn before that. He testified that he did not see Deputy Knight's vehicle approaching from Greenwood Loop. He testified that the deputy's activation of his lights and siren had nothing to do with why he made the U-turn. He denied seeing the patrol truck or lights, or hearing any siren, during his return drive to his friend's house.

Mr. Young agreed that his car was kicking up a lot of dust, but attributed that to it being a hot day and a dirt road. He denied that he was running away when Deputy Knight arrived at where he had stopped. He said he had only been walking to a spot where the puppy could "do its thing." RP at 152.

During Mr. Young's direct examination, he testified that he was familiar with Hoffman Road and estimated that his speed while on the road was "[a]bout 35." RP at 150.[2] He testified he was able to control his vehicle.

---

[2] The transcript of the trial includes many gaps and "(inaudible)" notations, including one following this answer.

5

No. 38604-0-III
*State v. Young*

During defense counsel's redirect examination of Mr. Young, he asked Mr. Young

to clarify the speed he was traveling at on Hoffman Road and Mr. Young again said,

"[a]round 35." RP at 161. Then the following questioning, objection and ruling

occurred:

> Q    Do you feel you were driving safely?
>
> [PROSECUTOR]: Objection. That's—
>
> THE COURT: That'll be sustained.
>
> [DEFENSE COUNSEL]: Well, your Honor, if I may address that issue.—
>
> [PROSECUTOR]: That's—issue for the jury to—
>
> THE COURT: I'll let [counsel] make his record.
>
> Go ahead.
>
> [DEFENSE COUNSEL]: The state must prove that—among the things that the state must prove is that Mr. Young was driving recklessly, and—that's an issue—recklessly includes some element of willfulness. So,—if Mr. Young believes he was driving safely that (inaudible).
>
> THE COURT: And I'll sustain the objection. This is the ultimate issue of why we are here this afternoon and that's for the jury to decide and not for Mr. Young to give an opinion on. So the objection's sustained.

RP at 161.

Defense counsel then asked more specific questions, eliciting Mr. Young's

testimony that at no time during the driving that was charged as his attempt to elude did

he lose control of his vehicle, at no point did he see anyone approaching Hoffman Road

6

No. 38604-0-III
*State v. Young*

from a driveway, and he did not recall encountering any other vehicles on Hoffman until

the arrival of Deputy Knight.

The jury found Mr. Young guilty and the court imposed a mid-range sentence of

four months' confinement.  Mr. Young appeals.

ANALYSIS

Mr. Young makes two assignments of error.  He contends that the trial court erred

when it sustained the State's objection to defense counsel's question about whether he

had been driving safely, and that the trial court's ruling denied him his constitutional

right to present a defense.  When presented with a contention that an evidentiary ruling

violated a defendant's right to present a defense, we engage in a two-part review process,

reviewing the trial court's evidentiary ruling for an abuse of discretion and then

reviewing de novo whether there has been a violation of the defendant's Sixth

Amendment to the United States Constitution right.  *State v. Arndt*, 194 Wn.2d 784,

797-98, 453 P.3d 696 (2019).

I.    THE TRIAL COURT ABUSED ITS DISCRETION IN SUSTAINING THE OBJECTION, BUT
      THE ERROR WAS HARMLESS

"The trial court is given considerable discretion to determine if evidence is

admissible."  *State v. Quaale*, 182 Wn.2d 191, 196, 340 P.3d 213 (2014) (citing *State v.

Demery*, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001) (plurality opinion)).  "'Where

reasonable persons could take differing views regarding the propriety of the trial court's

7

No. 38604-0-III
*State v. Young*

actions, the trial court has not abused its discretion.'" *Id.* (quoting *Demery*, 144 Wn.2d at 758). The trial court has abused its discretion if it makes an evidentiary ruling that is contrary to law. *Id.* (citing *State v. Neal*, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001)).

The State argues on appeal that the trial court did not err because framed as a question about Mr. Young's feelings ("*Do you feel* you were driving safely?") the question was leading, was irrelevant under ER 401, was unduly prejudicial under ER 403, and lacked foundation under ER 701. But none of those grounds was the basis for the State's objection. If one of them *had* been, defense counsel would have had the opportunity to lay a foundation or rephrase the question. Instead, the basis stated for the objection was, "That's—issue for the jury to—," which the trial court evidently correctly understood to be an objection that the question was addressed to an ultimate issue that was for the jury to decide. We will consider only the specific grounds for the objection raised in the trial court. *State v. Powell*, 166 Wn.2d 73, 82-83, 206 P.3d 321 (2009).

The jury was properly instructed that to convict Mr. Young, the State must prove, among other elements, "That while attempting to elude a pursuing police vehicle, the defendant drove his vehicle in a reckless manner." Clerk's Papers (CP) at 21. If a witness has personal knowledge of the driving at issue and a basis for opining that it was safe, not reckless, that would be relevant evidence. Mr. Young had personal knowledge of the driving at issue in this case.

8

No. 38604-0-III
*State v. Young*

Under ER 701, lay witnesses may testify in the form of an opinion or inference that is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of rule 702." "Testimony in the form of an opinion or inferences otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." ER 704.

When opinion testimony that embraces an ultimate issue is elicited in a criminal trial, it may constitute an impermissible opinion on *guilt*, notwithstanding ER 704. Impermissible opinion testimony on guilt violates a defendant's constitutional right to a jury trial. *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007). Of greatest concern are direct statements or inferences as to guilt, testimony as to the intent of the accused, or testimony regarding the credibility of a key witness. *City of Seattle v. Heatley*, 70 Wn. App. 573, 577-78, 854 P.2d 658 (1993); *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008) (intent of accused). Opinion testimony that is not a direct comment on the defendant's guilt or intent, or on the veracity of a witness, is otherwise helpful to the jury, and is based on inferences from the evidence, is not improper opinion testimony. *Heatley*, 70 Wn. App. at 578.

In *Heatley*, in which the defendant was charged with driving under the influence and negligent driving, the officer who arrested him and performed a field sobriety test

9

No. 38604-0-III
*State v. Young*

testified at trial about the defendant's performance on the test. He also testified, "'I determined that Mr. Heatley was obviously intoxicated and affected by the alcoholic drink that he'd been, he could not drive a motor vehicle in a safe manner.'" *Id.* at 576. This court agreed that his testimony "encompassed ultimate factual issues that are resolved by the trier of fact," but pointed out that under ER 704 that is not a basis for exclusion. *Id.* at 578. What mattered was that the officer's testimony "contained no direct opinion on Heatley's guilt or on the credibility of a witness," so it was properly admitted. *Id.* at 579.

In this case, the State's objection and the trial court's ruling were not that defense counsel's question sought a direct opinion on the issue of guilt, intent, or a key witness's credibility. The question sought evidence relevant to one element of the crime charged: whether Mr. Young was driving in a reckless manner. Deputy Knight testified without objection that Mr. Young's driving presented safety concerns, and his evidence provided support for the State's closing argument that Mr. Young was driving "at unsafe speeds." *See, e.g.*, RP at 111 (the deputy's concern about "safety of residents," given Mr. Young's

No. 38604-0-III
*State v. Young*

speed), *id.* at 132 (driving in "a safe manner" would not leave skid marks), *id.* at 134 (deputy could not catch up with Young if driving "safely"); *id.* at 187 (closing).[3]

Defense counsel's question sought evidence relevant to the same element. And if Mr. Young's answer was that he believed he was driving safely and why, it would not resolve guilt; a disputed issue would still remain on the essential issue of whether Mr. Young had "willfully failed or refused to immediately bring the vehicle to a stop after being signaled to stop." CP at 21 (Instr. 5). The only issue presented by the State's objection was whether the question was objectionable as embracing the ultimate issue of recklessness. As a matter of law, it was not objectionable on that basis. It was an abuse of discretion to sustain that objection.

We find the error harmless, however. Under the nonconstitutional harmless error test applied to evidentiary error, the defendant is required to show a reasonable probability that the error materially affected the outcome of the trial. *State v. Barry*,

---

[3] Mr. Young's opening brief pointed out that the State elicited Deputy Knight's opinion that Mr. Young was driving in an *unsafe* manner. The State characterizes this as a "backhanded untimely objection" to the deputy's testimony or as an argument that the State somehow opened the door to equally inadmissible evidence. It argues we should refuse to consider those challenges. Br. of Resp't at 3-4, 16-17.

That is not our understanding of Mr. Young's argument. We understand him to be arguing that Deputy Knight's opinions that the driving was unsafe were not objectionable and that he should have been permitted to present conflicting opinion testimony.

11

No. 38604-0-III
*State v. Young*

183 Wn.2d 297, 317-18, 352 P.3d 161 (2015). Mr. Young claims to meet this standard because (1) the State's evidence on the reckless driving element was weakened by the fact that Mr. Young was mostly out of Deputy Knight's sight, and (2) while Deputy Knight testified to what he observed that led him to conclude that Mr. Young was driving in a reckless manner, "Young himself was prevented from countering this important and recurring testimony with his own assessment." Br. of Appellant at 24.

It is true that Mr. Young was mostly out of the deputy's sight, so Deputy Knight could testify to only inferences. But it is not true that Mr. Young was prevented from responding to the deputy's inferences. Defense counsel was able to ask Mr. Young about his actions and about road, area, and weather conditions that would support a conclusion that he had not driven recklessly. Mr. Young testified that he was familiar with the road; that it was a clear, dry day; that he estimated his speed at 35 m.p.h.; that he always had control of the car; that he did not recall encountering any traffic on Hoffman Road; and that he did not observe anyone emerging from a driveway. His self-serving opinion that he considered this to be safe driving would add little. The trial court's error was harmless.

II. MR. YOUNG FAILS TO DEMONSTRATE THAT THE EXCLUDED EVIDENCE WAS MATERIAL AND THEREBY A VIOLATION OF THE RIGHT TO PRESENT A DEFENSE

The right to offer the testimony of witnesses and to compel their attendance if necessary, is fundamental and essential to a fair trial, and is incorporated in the due

12

No. 38604-0-III
*State v. Young*

process clause of the Fourteenth Amendment. U.S. CONST. amend. VI; *Washington v.*

*Texas*, 388 U.S. 14, 18-19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). The same right to

present testimony in one's defense is guaranteed by the Washington Constitution. WASH.

CONST. art. I, § 22; *Hudlow*, 99 Wn.2d at 16. That right, and the constitutional right to

confront the State's witnesses, are in plain terms the right to present a defense.

*Washington*, 388 U.S. at 19.

The State responds to Mr. Young's contention that his right to present a defense

was violated by arguing that the constitutional right does not include a right to present

evidence in violation of state evidence rules. Br. of Resp't at 20, 22. But it can include

that right. A criminal defendant's right to present a defense "is abridged by evidence

rules that 'infring[e] upon a weighty interest of the accused' and are '"arbitrary" or

"disproportionate to the purposes they are designed to serve."'" *Holmes v. South*

*Carolina*, 547 U.S. 319, 324-25, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006) (quoting

*United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed 2d 413 (1998)

(quoting *Rock v. Arkansas*, 483 U.S. 44, 58, 56, 107 S. Ct. 2704, 97 L. Ed. 2d 37

(1987))).

When a *state rule* results in the exclusion of evidence, the test for determining

whether the exclusion violated the defendant's constitutional right is a balancing test,

which "weigh[s] the defendant's right to produce relevant evidence against the State's

interest in limiting the prejudicial effects of that evidence." *State v. Jennings*, 199 Wn.2d

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38604-0-III
*State v. Young*

53, 63, 502 P.3d 1255 (2022) (citing *Hudlow*, 99 Wn.2d at 16). In this case, however, the trial court excluded evidence contrary to an evidence rule, so the *Hudlow* balancing test defies application. The evidence was relevant; there was no state interest in limiting it. Nothing can be weighed against Mr. Young's interest in presenting it.

In the absence of any countervailing interest, Mr. Young's briefing proceeds immediately to the heightened standard for constitutional error: whether the State has proved beyond a reasonable doubt that the jury would have reached the same result in the absence of the error. *Chapman v. California*, 386 U.S. 18, 21, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). We disagree. It cannot be the case that any defendant who identifies an erroneous exclusion of relevant evidence that is harmless under the nonconstitutional standard can—by doing no more than asserting a constitutional claim—impose on the State the heightened burden of proving constitutional error. Controlling federal and state case law provides a different test that can be applied to determine the threshold question of whether a constitutional error has even occurred.

In *United States v. Valenzuela-Bernal*, the United States Supreme Court observed that in *Washington*, "this Court found a violation of [the Compulsory Process] Clause of the Sixth Amendment when the defendant was arbitrarily deprived of 'testimony [that] would have been *relevant* and *material*, and . . . *vital* to the defense.'" 458 U.S. at 867 (alterations in original) (quoting *Washington*, 388 U.S. at 16). Turning to cases involving what the Court said "might loosely be called the area of constitutionally guaranteed

14

No. 38604-0-III
*State v. Young*

access to evidence"—a category in which it included *Brady*[4] rights and protection from preindictment and postindictment delay—the Court "[found] *Washington*'s intimation of a materiality requirement more than borne out." *Id.* at 867-68.

It held that implicit in the requirement of materiality in these constitutionally-guaranteed access to evidence cases "'is a concern that the suppressed evidence might have affected the outcome of the trial.'" *Id.* at 868 (quoting *United States v. Agurs*, 427 U.S. 97, 104, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976)). Quoting *Agurs* further, it explained:

> "The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. . . . This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt."

*Id.* at 868 (quoting *Agurs*, 427 U.S. at 112-13). It observed that similarly, in the preindictment and postindictment delay contexts, a constitutional violation is recognized only when a loss of evidence has prejudiced the defense. *Id.* at 868-69.

Although no Washington decision has been brought to our attention that discusses what "materiality" requires when a defendant contends he was denied the right to present relevant evidence, our Supreme Court has recognized that the constitutional right is limited to witnesses and testimony "material to the defense," and that "the defendant

---

[4] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

15

No. 38604-0-III
*State v. Young*

carries the burden of showing materiality." *Smith*, 101 Wn.2d at 41; *accord State v. Pacheco*, 107 Wn.2d 59, 67, 726 P.2d 981 (1986). In *Smith*, the materiality of the evidence was not shown where the defense to which it pertained failed as a matter of law. *Smith*, 101 Wn.2d at 45.

Where the trial court erroneously applies state law in excluding evidence, authority from at least five federal courts of appeals supports applying a materiality standard to determine whether a violation of the right to present a defense has occurred. In *United States v. Lopez-Alvarez*, 970 F.2d 583, 588 (9th Cir. 1992), the court observed that when evidence is excluded on the basis of an *improper* application of state evidence rules, there can be a due process concern. But "[a]t a minimum, a defendant must demonstrate that the excluded evidence was important to his defense." *Id.* Where the testimony sought to be adduced "would not have added substantially to the knowledge the jury gained during the course of the trial," then "viewed in the context of the entire trial, the district court's ruling did not deny Lopez-Alvarez a meaningful opportunity to present a complete defense." *Id.* And "[b]ecause the court's erroneous ruling did not violate the defendant's constitutional rights, we do not test the error against the stringent 'beyond a reasonable doubt' harmless error standard of *Chapman v. California.*"

In *Agard v. Portuondo*, 117 F.3d 696, 704 (2d Cir. 1997), *rev'd on other grounds*, *Portuondo v. Agard*, 529 U.S. 61, 75, 120 S. Ct. 1119, 146 L. Ed. 2d 47 (2000), the evidence excluded was expert testimony, which the Appellate Division of the New York

16

No. 38604-0-III
*State v. Young*

courts had concluded was improperly excluded under New York law. The question

before the Second Circuit, however, was "whether the ruling, viewed in light of the

whole record, deprived Agard of a fundamentally fair trial" by violating the guarantee of

"a meaningful opportunity to present a defense." *Id.* at 705. It observed, "Erroneous

evidentiary rulings rarely rise to the level of harm to this fundamental constitutional

right." *Id.* And it held that "[t]o isolate those few situations where such mistakes injure

constitutional rights, this court applies the standard of 'materiality' as set forth by the

Supreme Court in *United States v. Agurs*"—the same standard from *Agurs* relied on in

*Valenzuela-Bernal*, and that we reproduce above. *Id.*

Applying that standard, the Second Circuit concluded that the excluded evidence

was not material. The case involved a charge of anal rape and a defense of consent, and

the excluded testimony would have addressed whether medical evidence of trauma to the

alleged victim was proof of nonconsensual intercourse. The defense expert was

permitted to testify that individuals who participate in voluntary anal intercourse

frequently suffered trauma, however, which "allowed Agard to make an argument about

the significance of the lack of medical evidence . . . and thereby saved the erroneous

ruling from rising to the level of constitutional harm because it did not deprive him of the

opportunity to make an argument to the jury." *Id.* at 706-07.

The Tenth Circuit Court of Appeals recognized in *Richmond v. Embry*, 122 F.3d

866, 872 (10th Cir. 1997), that *Valenzuela-Bernal* holds that the materiality of excluded

17

No. 38604-0-III
*State v. Young*

evidence to the presentation of a defense determines whether a defendant was deprived of

a fundamentally fair trial. *Id.* at 872. The defendant had been found guilty of sexual

assault on a child, the victim being his 12-year-old daughter. *Id.* at 868. The excluded

evidence was testimony from the girl's mother that she found condoms in the girl's

dresser and had concerns about a neighborhood boy she had found in her daughter's

bedroom. *Id.* The defendant wished to offer the mother's testimony as providing as an

alternative explanation for medical evidence of healed lacerations of the girl's hymen.

*Id.*

The state court had found that the mother's evidence was properly excluded under

the state's rape shield law, while the federal district court had found a misapplication of

the state's rape shield law. *Id.* at 869-70. The Tenth Circuit applied both a balancing test

(assuming there was a state interest in excluding the evidence) and the materiality

standard. To determine materiality, it explained, "looking at the record as a whole, we

inquire as to whether the evidence was of such an exculpatory nature that its exclusion

affected the trial's outcome." *Id.* at 874 (citing *Valenzuela-Bernal*, 458 U.S. at 868).

"[D]ue to the evidence's marginally relevant nature, and the context of the record as a

whole," the court held "the excluded testimony was not constitutionally material." *Id.*

The Eighth Circuit Court of Appeals has held that a criminal defendant's rights

under the compulsory process clause of the Sixth Amendment require the *Valenzuela-*

*Bernal* showing that the testimony of the proposed witnesses is favorable and material.

18

No. 38604-0-III
*State v. Young*

*Perry v. Lockhart*, 871 F.2d 1384, 1386-87 (8th Cir. 1989); *accord Wright v. Lockhart*, 914 F.2d 1093, 1098 (8th Cir. 1990) (holding that the omitted evidence must be evaluated in the "context of the entire record," quoting *Valenzuela-Bernal*'s reliance on language from *Agurs*).

In *Perry*, the State conceded that the state trial court's ruling denying Perry's request for a court order compelling the presence of several witnesses had been erroneous. 871 F.2d at 1387. The Eighth Circuit agreed with the district court that Perry failed to show that the absent witnesses were material, however. *Id.* Perry sought to offer the witnesses' testimony to establish that he was in Alabama at the time of the capital felony murders with which he was charged, which took place in Arkansas. *Id.* at 1386. There were four other alibi witnesses whose live testimony Perry was able to present at trial, however, and the Eighth Circuit observed that "[t]he testimony of each of those witnesses, with [one] possible exception[,] was stronger, more certain, and more specific than Glenda Perry's," with Glenda Perry being the one *absent* witness whose testimony would have contradicted the State's case. *Id.* at 1388. Given that the jury had rejected the testimony of the alibi witnesses who did provide live testimony at trial, the Eighth Circuit found that "there was no reasonable likelihood that Glenda Perry's live testimony would have altered this outcome, and therefore her testimony was not material." *Id.*

19

No. 38604-0-III
*State v. Young*

The Sixth Circuit Court of Appeals has adopted the Second Circuit standard. *See,
e.g., United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (citing *Washington v.
Schriver*, 255 F.3d 45, 57 (2d Cir. 2001)); *United States v. Odeh*, 815 F.3d 968, 979 (6th
Cir. 2016) (same).

Applying the *Valenzuela-Bernal* standard to the evidence excluded at Mr. Young's
trial, there is no reasonable likelihood that Mr. Young's testimony to a self-serving
opinion that he was driving safely would have changed the outcome. The defense was
able to present the facts on which his opinion would have been based, and defense
counsel was able to argue to the jury that those facts supported a finding that he had been
driving safely. Because materiality is not shown, there was no constitutional violation.

Affirmed.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.

20