FILED
United States Court of Appeals
Tenth Circuit

February 4, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JASON ALAN CAPPELLI,

        Petitioner-Appellant,

v.

JOE ORTIZ, Executive Director;
COLORADO ATTORNEY
GENERAL,

        Respondents-Appellees.

No. 07-1231
(D.C. No. 04-cv-01235-WYD)
(D. Colo.)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **BALDOCK**, **BRORBY**, and **EBEL**, Circuit Judges.[**]

---

    Jason Alan Cappelli, a Colorado state prisoner appearing with counsel,

seeks a certificate of appealability (COA) pursuant to 28 U.S.C. § 2253(c) to

appeal the district court's denial of his application for a writ of habeas corpus

under 28 U.S.C. § 2254. Issuance of a COA is jurisdictional. *Miller-El v.*

---

[*]    This order is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

*Cockrell*, 537 U.S. 322, 336 (2003). A COA can issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. Having carefully considered Mr. Cappelli's application for a COA, we deny his application and dismiss this matter.

## I. Background

### A. Factual and Procedural History.

In its order denying Mr. Cappelli's habeas application, the district court summarized the factual evidence presented at Mr. Cappelli's trial and the procedural background of this case as follows:

> On May 24, 1999, Mr. Cappelli drove to a Blockbuster Video Store in Lakewood, Colorado. While in the store, he had a verbal confrontation with the store manager, Lacey Turnbow, who asked him to leave the store. Mr. Cappelli got into his truck, but had difficulty backing out of his parking space because a car was in the way. Mr. Cappelli honked his horn and began yelling at the driver of the other vehicle, Jonathan Rivers. Both drivers got out of their vehicles. Mr. Cappelli ran up to the other driver and kicked him in the chest several times, knocking him off his feet and back into the driver's side doorway of his vehicle. When the passenger in Mr. River[s'] car, Jose Aguirre, got out to help Mr. Rivers, Mr. Cappelli tried to kick him but missed. Mr. Cappelli then chased both Mr. Rivers and Mr. Aguirre around Mr. Rivers' car.

At that point, Lacey Turnbow and her sister Charlotte Turnbow, who happened to be visiting her sister at the time, followed Mr. Cappelli out of the store to make sure he left, and Lacey Turnbow attempted to intervene. When Mr. Cappelli threatened her, she ran back into the store to call the police. Mr. Cappelli got back into his truck and parked it next to Mr. Rivers' car. He got out of his truck and tried to punch Mr. Aguirre, retrieved a bottle of motor oil from his truck, and poured oil over the exterior and throughout the interior of Mr. Rivers' car. Mr. Cappelli then drove away.

On May 26, 1999, Mr. Cappelli was charged in Jefferson County District Court Case No. 99CR1378 with criminal mischief, causing damage of between $4,500 and $15,000 (class-four felony); third-degree assault as to victim Mr. Rivers (class-one misdemeanor); attempted third-degree assault as to victim Mr. Aguirre (class-two misdemeanor); and menacing as to victim Lacey Turnbow (class-three misdemeanor). On January 13, 2000, Mr. Cappelli was convicted by a jury on all four charges. He was sentenced to concurrent prison terms totaling twelve years. Mr. Cappelli's conviction was affirmed on direct appeal. *People v. Cappelli*, No. 00CA808 (Colo. Ct. App. Oct. 24, 2002) (not selected for publication). On March 17, 2003, the Colorado Supreme Court denied certiorari review. . . .

On June 15, 2004, Mr. Cappelli filed the instant action and, on the same day, filed a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure in the Jefferson County District Court . . . . On August 16, 2004, the trial court denied the motion. On October 5, 2006, the Colorado Court of Appeals affirmed. *People v. Cappelli*, No. 04CA1682 (Colo. Ct. App. Oct. 5, 2006). [On February 26, 2007, the Colorado Supreme Court denied certiorari review.]

*Cappelli v. Ortiz*, 2007 WL 646287, at *1 (D. Colo. Feb. 28, 2007).

## B. Pertinent Trial Testimony.

In their answer to Mr. Cappelli's habeas application, respondents accurately

summarized the trial testimony that is pertinent to this appeal as follows:

During his testimony [on cross-examination], victim Rivers admitted that he was on probation [under a deferred judgment and sentence entered in Arapahoe County District Court] for sexual assault on a child, that his probation had been extended, and that one of the terms of his probation was that he not commit any other criminal offenses.

The defendant called Rivers's probation officer [to testify as a witness on his behalf in his case-in-chief] in order to establish that Rivers had a motive to fabricate certain portions of his testimony. The officer admitted that if Rivers had assaulted someone or had given false information to a police officer, that his probation could be terminated. Through this witness, defense counsel also attempted to establish that Rivers had been criminally charged with sidewalk peddling a week after the incident with Cappelli. However, the trial court sustained the prosecutor's objection that this evidence was not relevant.

On cross-examination, the prosecutor asked whether Rivers had been an "exemplary probationer," and the probation officer replied that he had been "overall compliant [with the terms of his probation]." The probation officer also answered affirmatively to the prosecutor's question whether, between August of 1995 and May 24, 1999 (the date of the incident[] in this case), Rivers had complied with his probationary terms. The prosecutor then asked whether the probation officer had seen any reason "since that period of time" to revoke Rivers's probation, and the officer confirmed that she had seen no such reason.

At that point, defense counsel in a bench conference took issue with the probation officer's claim that Rivers had been an exemplary probationer in light of defense counsel's information that Rivers had been criminally charged for sidewalk peddling [a week after the incident with Cappelli]. The trial court agreed that the way the prosecutor had phrased the cross-examination might have caused a misimpression. Cappelli agreed to the court's proposed remedy – to clarify that the probation officer's testimony about Rivers's compliance with his probationary terms applied only to his conduct through May 24, 1999, and not after that date.

Aplt. App., Vol. I at 23-24 (citations omitted; fourth alteration in original).

## II. Analysis

Mr. Cappelli claims that he is entitled to federal habeas relief because his convictions were obtained in violation of his Sixth Amendment right to confront the witnesses against him. Specifically, he argues that his confrontation rights were violated during his case-in-chief because the trial court prohibited him from questioning Mr. Rivers' probation officer, Cheryl Boller, about two criminal charges for sidewalk peddling that were filed against Mr. Rivers a week after the incident in this case. According to Mr. Cappelli, the trial court thereby prevented him from rebutting Ms. Boller's testimony during cross-examination by the prosecution that Mr. Rivers was an exemplary probationer. As noted by the district court, Mr. Cappelli "also alleges that Ms. Boller had signed a petition to revoke Mr. Rivers' probation [in August 1999; *see* Aplt. App., Vol. I at 114-19], which was pending at the time of trial, to support his theory that because Mr. Rivers was facing the possible revocation of his probation he had a motive to fabricate certain portions of his [trial] testimony." *Cappelli*, 2007 WL 646287, at *3.

With regard to the latter allegation, Mr. Cappelli's trial counsel was not aware at the time of Mr. Cappelli's trial in January 2000 that Ms. Boller had filed a petition to revoke Mr. Rivers' probation a couple of months after the incident with Mr. Cappelli, and the existence of the petition to revoke was not disclosed at

any time during the trial.[1]  As a result, Mr. Cappelli's trial counsel did not attempt

to offer it into evidence at any point during the trial, and the trial court never

affirmatively excluded it from the trial.  Hence, it cannot be relied on now to

support a Confrontation Clause claim.[2]  *Cf. Pennsylvania v. Ritchie*, 480 U.S. 39,

52 (1987) (holding that "the right to confrontation is a *trial* right, designed to

prevent improper restrictions on the types of questions that defense counsel may

ask during cross-examination," and it does not create a right to pretrial

discovery).[3]

    With regard to the trial court's refusal to allow Mr. Cappelli's trial counsel

to question Ms. Boller in Mr. Cappelli's case-in-chief about the sidewalk peddling

charges that were filed against Mr. Rivers, Mr. Cappelli's challenge to the

---

[1]     In Mr. Cappelli's opening brief, his counsel states that he first learned of the filing of the petition to revoke Mr. Rivers' probation while he was preparing the habeas application in this case.  *See* Aplt. Opening Br. at 3-4.

[2]     Although we are in no way indicating that any such claims would be meritorious, we note that Mr. Cappelli's trial counsel's lack of knowledge about the filing of the petition to revoke Mr. Rivers' probation could form the basis for potential claims under *Brady v. Maryland*, 373 U.S. 83 (1963) (failure of prosecution to produce exculpatory evidence) and/or *Strickland v. Washington*, 466 U.S. 668 (1984) (ineffective assistance of counsel).  However, Mr. Cappelli has abandoned the *Brady* claim that he asserted in the district court proceedings, *see Cappelli*, 2007 WL 646287, at *4-5, and he has never asserted a *Strickland* claim in this case.

[3]     As the Supreme Court further explained in *Ritchie*, "[t]he ability to question adverse witnesses . . . does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony."  480 U.S. at 53.

exclusion of this evidence raises both Confrontation Clause issues and issues regarding his due process right to present defense-witness testimony. Although these issues overlap, they raise distinct claims that must be analyzed separately, and we will first analyze the Confrontation Clause issues.

At trial, Ms. Boller arguably testified adversely to Mr. Cappelli when she testified during cross-examination by the prosecution that Mr. Rivers was a model probationer. Assuming, without deciding, that this was in fact adverse testimony, and that the trial court erred in limiting Ms. Boller's testimony to events that occurred prior to the altercation between Mr. Cappelli and Mr. Rivers, then, arguably, Mr. Cappelli had a Sixth Amendment right under the Confrontation Clause to confront Ms. Boller with the sidewalk peddling charges in order to impeach her testimony. *See Chambers v. Mississippi*, 410 U.S. 284, 297-98 (1973) ("The availability of the right to confront and to cross-examine those who give damaging testimony against the accused has never been held to depend on whether the witness was initially put on the stand by the accused or by the State."); *Wasko v. Singletary*, 966 F.2d 1377, 1381 (11th Cir. 1992) ("The sixth amendment right to cross-examination is not strictly limited to the confrontation of witnesses called by the state; it also extends to defense witnesses who testify adversely to the defendant.").

Even if the trial court's limitation on the examination of Ms. Boller violated Mr. Cappelli's Confrontation Clause rights, however, the limitation is

subject to harmless error review. *See Jones v. Gibson*, 206 F.3d 946, 957 (10th Cir. 2000). Further, when a federal court is faced with a Confrontation Clause violation in a habeas case brought by a state prisoner under 28 U.S.C. § 2254, the relevant harmless error analysis is whether the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637-38 (1993)); *see also Fry v. Pliler*, 551 U.S. 112, 127 S. Ct. 2321, 2328 (2007) ("We hold that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' [harmless error] standard set forth in *Brecht* . . . .").

Applying the *Brecht* standard, we agree with respondents that, at best, the trial court committed only harmless error when it prohibited Mr. Cappelli's trial counsel from questioning Ms. Boller about Mr. Rivers' sidewalk peddling charges. As succinctly explained by respondents in their answer to Mr. Cappelli's habeas application:

> As discussed above, there was no complete denial of opportunity to establish Rivers's bias and motive from his probationary status. Furthermore, Rivers was not the only witness to establish the commission of the offenses. In addition to Rivers, two other eyewitnesses, Lacey and Charlotte Turnbow, testified at trial. Even if Rivers had been further impeached [through the testimony of Cheryl Boller], this would not have affected the credibility of the Turnbows, who also testified to the assault against Rivers, to the threat to kill or harm Lacey Turnbow (the basis of the misdemeanor menacing conviction), and to the facts establishing the one felony

charge of criminal mischief, causing damage of between $4,500 and $15,000.

Because the charges in this case were established by ample evidence of Cappelli's guilt by witnesses independent of Rivers, additional impeachment of Rivers [through the testimony of Cheryl Boller] would not have had a substantial and injurious effect or influence in determining the jury's verdict.

Aplt. App., Vol. I at 27 (citation and footnote omitted).

Next, consistent with the approach taken by the district court in its order denying Mr. Cappelli's habeas application, *see Cappelli*, 2007 WL 646287, at *3-4, the limitations imposed by the trial court on Mr. Cappelli's examination of Ms. Boller can arguably be viewed as a denial of his due process right to present defense-witness testimony, *see Richmond v. Embry*, 122 F.3d 866, 870-71 (10th Cir. 1997) (declining, in habeas case brought under 28 U.S.C. § 2254, to treat state trial court's exclusion of favorable testimony from defense witness in defendant's case-in-chief as Confrontation Clause issue and instead construing defendant's claim to be based on an alleged violation of his due process right to present defense-witness testimony). "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense. . . . This right is a fundamental element of due process of law." *Id.* at 871 (quotation omitted). In order to succeed on this claim, however, Mr. Cappelli must show a denial of fundamental fairness, an extremely difficult showing to make. As we explained in *Richmond*:

Additionally, to establish a violation of the right to compulsory process, a fair trial or due process, a defendant must show a denial of fundamental fairness:  In order to declare a denial of [fundamental fairness] we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.  It is the materiality of the excluded evidence to the presentation of the defense that determines whether a petitioner has been deprived of a fundamentally fair trial.  Evidence is material if its suppression might have affected the trial's outcome.  In other words, material evidence is that which is exculpatory– evidence that if admitted would create reasonable doubt that did not exist without the evidence.

*Id.* at 872 (quotations and citations omitted; alteration in original).

Applying these standards, we conclude that Mr. Cappelli was not denied fundamental fairness when the trial court prohibited his trial counsel from questioning Ms. Boller about Mr. Rivers' sidewalk peddling charges.  Simply put, we are confident that the exclusion of that evidence did not affect the outcome of Mr. Cappelli's trial.

The application for a COA is DENIED and this matter is DISMISSED.

Entered for the Court


Bobby R. Baldock
Circuit Judge

-10-