**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 20 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

CHRISTOPHER YOUNG,

      Petitioner-Appellant,

v.

RANDY G. WORKMAN, Warden; and
DICK CONNER CORRECTIONAL
CENTER,

      Respondents-Appellees.

No. 02-6325

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 01-CV-1382-C)**

---

Steven M. Presson (Robert W. Jackson with him on the brief) of Jackson &
Presson, P.C., Norman, Oklahoma, for Petitioner-Appellant.

Nancy E. Connally, Assistant Attorney General (W.A. Drew Edmondson, Attorney
General, with her on the brief), State of Oklahoma, Oklahoma City, Oklahoma,
for Respondent-Appellee.

---

Before **SEYMOUR**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**HARTZ**, Circuit Judge.

---

**SEYMOUR**, Circuit Judge.

Christopher Young was convicted of multiple acts of sexually abusing a child, all after three prior convictions, in violation of Oklahoma law. OKLA. STAT. tit. 21, §§ 886, 888, 1123. At trial, the court barred Mr. Young from introducing certain witnesses and documents as a sanction for his counsel's failure to turn over the discovery information to the state. In this habeas action, Mr. Young contends the sanction violated his Sixth Amendment right to present a defense and resulted in a fundamentally unfair trial. He appeals the district court's denial of relief. We affirm.

# I.

Prior to Mr. Young's trial, the state objected to the introduction of several Department of Human Services (DHS) reports and the testimony of certain witnesses because defense counsel had failed to provide court ordered discovery regarding the documents and the nature of the witnesses' testimony. According to defense counsel, he had planned to introduce testimony "regarding inconsistencies in the alleged victim's version of events" and "documents indicating that the child's care givers noticed nothing unusual about the child's demeanor or behavior while she was at day care during the relevant period of time." Aplt. br. at 11-12. After hearing argument from the parties about whether to admit the evidence, the court noted it had previously ordered defense counsel to provide the

state with any DHS records he would be relying on, along with more detailed information regarding the testimony of the proposed witnesses. The court further noted it had continued the trial so defense counsel could provide the discovery. Despite the court's orders and continuance, defense counsel completely failed to turn over the discovery information.

During the trial, the court made a further record regarding the discovery issue, noting that its decision to sanction counsel by refusing to admit the DHS reports and the testimony was based on counsel's refusal to abide by its orders:

There has been no further discovery by you, [defense counsel], to the state. So you did not comply with my order back in April of 1999. As you did not comply with my order . . . and did not give the state the discovery that I ordered you to give under 2002,[1] it allows the Court to order certain

---

[1] Section 2002 of the Oklahoma Discovery Code provides, in relevant part:
B. Disclosure of Evidence by the Defendant.
    1. Upon request of the state, the defense shall be required to disclose the following:
        a. the *names and addresses of witnesses which the defense intends to call at trial*, together with their relevant, written or recorded statement, if any, or if none, *significant summaries of any oral statement . . . .*
. . . .

    3. Upon the prosecuting attorney's request after the time set by the court, the defendant *shall allow him access at any reasonable times and in any reasonable manner to inspect, photograph, copy, or have reasonable tests made upon any book, paper, document, photograph, or tangible object* which is within the defendant's possession or control and which:
        a. *the defendant intends to offer in evidence . . . .*

(continued...)

sanctions, and the sanction that I imposed in this case was that those witnesses would not be called as the state still had not – did not have sufficient information to adequately proceed to trial. I did not want to continue the trial because it was time to take this case to trial. And that's a remedy that I chose.

Tr., vol. IV, at 103–04.

Mr. Young was convicted of three counts of forcible oral sodomy and twelve counts of lewd or indecent acts with a child. He was sentenced to thirty years incarceration per count, to run consecutively. On direct appeal, the Oklahoma Court of Criminal Appeals (OCCA) affirmed. Pursuant to 28 U.S.C. § 2254, Mr. Young then filed a petition for a writ of habeas corpus. The district court denied relief on all grounds. We granted a certificate of appealability on only one issue: whether Mr. Young's trial was rendered fundamentally unfair when the trial court excluded evidence as a sanction for repeated discovery violations.

---

[1](...continued)
. . . .

E. Regulation of Discovery.

> 2. Failure to Comply with a Request. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant continuance, *or prohibit the party from introducing evidence not disclosed*, or it may enter such other order as it deems just under the circumstances.

OKLA. STAT. tit. 22, § 2002 (emphases added).

-4-

## II.

Mr. Young filed his habeas corpus petition after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  His case is therefore governed by its provisions.  *See Williams v. Taylor*, 529 U.S. 420, 429 (2000).  Under AEDPA, a federal court may not grant habeas relief on a claim adjudicated on the merits in state court unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).  State court fact findings are presumed correct unless the petitioner rebuts them by clear and convincing evidence.  *Hale v. Gibson*, 227 F.3d 1298, 1309 (10th Cir. 2000) (quoting *Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999)).

A state court decision is contrary to clearly established federal law under section 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court decision is an unreasonable application of federal law under section

2254(d)(2) "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The reasonableness of the state court's application of federal law is to be evaluated by an objective standard under which a state court decision may be held reasonable even if not all reasonable jurists would agree with that conclusion. *See id.* at 409-10. The Supreme Court has cautioned "that an *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law." *Id.* at 412 (emphasis in original).

On direct appeal to the OCCA, Mr. Young contended his Sixth Amendment right to present a defense was violated by the sanctions imposed by the trial court. The OCCA addressed this issue on its merits, holding that "the district court did not err in excluding Appellant's witnesses based on the failure to comply with discovery as there is no proof the witnesses were material or that appellant was prejudiced by the sanction." Aplt. app. at 53-54.

Mr. Young's Sixth Amendment rights to compulsory process and a fair trial, as well as his Fourteenth Amendment right to due process, include the right to present witnesses in his own defense. *Richmond v. Embry*, 122 F.3d 866, 871 (10th Cir. 1997) (citing *Washington v. Texas*, 388 U.S. 14, 18-19 (1967)). As the Supreme Court has stated,

> [t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington*, 388 U.S. at 19. "By necessity, the right of a defendant to present witnesses in his or her defense includes the right to have the jury hear the testimony those witnesses are called to give." *Richmond*, 122 F.3d at 871 (citing *Rock v. Arkansas*, 483 U.S. 44, 55 (1987)). "In presenting such testimony, [however], the defendant must comply with established rules of evidence and procedure as required by the state 'to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *Id.* at 871-72 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)).

Certainly, "the state may not arbitrarily deny a defendant the ability to present testimony that is 'relevant and material, and . . . vital to the defense.'" *Id.* at 872 (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (further quotation omitted)). Nevertheless, "[w]hile a state may not apply a rule of evidence mechanistically to defeat the ends of justice, in appropriate circumstances, the defendant's right to present relevant testimony may 'bow to accommodate other legitimate interests in the criminal trial process.'" *Id.* (quoting *Michigan v. Lucas*, 500 U.S. 145, 149 (1991) (further quotation omitted)). The

-7-

integrity and efficient administration of judicial proceedings constitute such countervailing interests. *See Taylor v. Illinois*, 484 U.S. 400, 414-15 (1988) (noting importance of balancing defendant's right to present witnesses with integrity of judicial process and judicial efficiency); *United States v. Combs*, 267 F.3d 1167, 1179 (10th Cir. 2001) ("[e]ven in the absence of prejudice, integrity and scheduling considerations alone may justify suppression of otherwise admissible evidence offered by the delinquent party." (quoting *United States v. Russell*, 109 F.3d 1503, 1511 (10th Cir. 1997))).

Mr. Young must show his trial was fundamentally unfair if he is to establish a violation of his compulsory process, fair trial, or due process rights: "'[i]n order to declare a denial of [fundamental fairness] we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.'" *Richmond*, 122 F.3d at 872 (quoting *Valenzuela-Bernal*, 458 U.S. at 872 (further quotation omitted)). "It is the materiality of the excluded evidence to the presentation of the defense that determines whether a petitioner has been deprived of a fundamentally fair trial." *Maes v. Thomas*, 46 F.3d 979, 987 (10th Cir. 1995). Evidence is material if its suppression might have affected the trial's outcome. *Valenzuela-Bernal*, 458 U.S. at 868. In other words, "material evidence is that which is exculpatory – evidence that if admitted would create reasonable doubt that did not exist without the

evidence." *Richmond*, 122 F.3d at 872 (citing *Valenzuela-Bernal*, 458 U.S. at 868) (further citation omitted)).

On this record, there is simply no indication that the evidence precluded by the trial court would have created reasonable doubt had it been introduced. As the district court noted,

> [t]he anticipated witnesses would have testified regarding inconsistencies in the victim's version of events. The DHS reports would have revealed that no one noticed anything unusual about the child while she was at a daycare center. Testimony regarding the child's inconsistent statements and demeanor was heard by the jury throughout the trial. At most, the excluded evidence would only repeat previously admitted evidence regarding the child's credibility, that being statements that the child was upset at [Mr. Young] and wanted to get him in trouble and that she had made up the story of molestation.

Aplt. app. at 46.

In his brief to this court, Mr. Young merely asserts without substantiation or argument that "[i]t is equally clear that the excluded evidence was material, and it *might* have affected the outcome of the trial." Aplt. br. at 14 (emphasis in original). Our review of the record supports a contrary conclusion. Given the other evidence introduced at trial, we are not persuaded the evidence undercutting the child's credibility or documenting inconsistent statements would be anything more than cumulative.

Rather than analyzing materiality, Mr. Young argues the Supreme Court's decision in *Taylor* "strongly demonstrates that the trial court should *not* have

imposed such a drastic and severe sanction." *Id.* at 13 (emphasis in original). He bases his *Taylor* argument on the fact that the trial court did not make specific findings that his counsel's discovery violations were willful or motivated by a desire to obtain a tactical advantage. *See id.* The "willful" and "tactical advantage" language does derive from *Taylor*. *See* 484 U.S. at 415. Mr. Young's reading of that case, however, is flawed.

In *Taylor*, the Supreme Court affirmed the trial court's exclusion of a witness whose name did not surface until the second day of trial despite the fact that defense counsel knew the witness's name before trial. *Id.* at 403-05. Finding this violation of the discovery rules to be willful and blatant, the trial court did not allow the witness to testify. *Id.* at 405. In ruling that the sanction of excluding the witness's testimony did not violate the defendant's rights under the Compulsory Process Clause of the Sixth Amendment, the Court focused on the necessity of balancing interests:

> [i]t is elementary, of course, that a trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor. But the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests. The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance.

*Id.* at 414-15. It is clear from the record the trial court here engaged in such

balancing.

Where a party has failed to comply with a discovery request, and the failure is "willful and motivated by a desire to obtain a tactical advantage" at trial, then exclusion of the evidence is "entirely consistent with the purposes of the Compulsory Process Clause" of the Sixth Amendment. *Id.* at 415. However, the Court made it clear in *Taylor* that while willfulness and seeking of tactical advantage justified exclusion, it was "neither necessary nor appropriate . . . to attempt to draft a comprehensive set of standards to guide the exercise of [a court's] discretion [in ordering the exclusion of evidence] in every possible case." *Id.* at 414. Mr. Young's argument that the trial court did not make a specific finding of willfulness in this case misses the point of the Court's case-by-case approach: such a finding is not required for exclusion to be justified as a sanction for discovery violations. *See Lucas*, 500 U.S. at 151-53 (holding exclusion of testimony as sanction for violating discovery rule does not violate Compulsory Process Clause as long as exclusion will prevent prejudice to the state and preserve the integrity of the judicial process); *United States v. Nobles*, 422 U.S. 225, 241 (1975) (court's "preclusion sanction was an entirely proper method of assuring compliance with its order" when counsel refused to comply with court's order to submit copy of investigator's report to prosecution).

Moreover, although a specific finding of willfulness is not required, the

-11-

clear inference from the trial court's questioning of Mr. Young's counsel is that the court believed counsel's behavior to be willful.

> THE COURT: . . . if I ordered you to get something to me, would you bring it to me or would you just tell me maybe I should just come by your office in the event they might be there when I happen to come by? This order to the state told the state that at some point in time you might have these records. It is not incumbent upon the state to call your office every day and say, Mr. James, do you have those records yet, I'd like to get them. You made absolutely no effort to get those records to the state or at least even notify the state I've got the records, if you want to come and get them and copy them, they are available. Isn't that correct?

> MR. JAMES: In response to your question, yes, I would bring them to the Court because of my respect to the Court.

> THE COURT: And I understand. But isn't it correct that you did not even notify Ms. High that you had finally gotten those records and that you – these were the records that you intended using? Did you even do that?

> MR. JAMES: No I did not notify her, no, Your honor.

Tr., vol. IV, at 105-06.

We do not require the trial court to use the word "willful" if the record clearly reflects the court's belief that counsel's violation of a discovery order was indeed willful. To hold otherwise would create reliance on magic words, which we decline to do. *Cf., e.g.*, *United States v. Kelley*, 359 F.3d 1302, 1305 (10th Cir. 2004) (unnecessary for district court to "recite any magic words" to show it has fulfilled its responsibility to be mindful of sentencing factors); *Wells v. City & County of Denver*, 257 F.3d 1132, 1150 (10th Cir. 2001) (district court

-12-

conducted time-place-manner analysis, despite its failure to say magic words so indicating); *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999) (in employment disability context, unnecessary for employee to express desire for reassignment in magic words).

On this record, the exclusion of testimony as a sanction for violation of a procedural rule did not violate Mr. Young's constitutional rights. This conclusion is consistent with our prior decisions. *See Combs*, 267 F.3d at 1178-80 (upholding exclusion of defense witness based on failure to disclose witness in accordance with discovery requirement to which parties had assented); *Watley v. Williams*, 218 F.3d 1156, 1159 (10th Cir. 2000) (denying habeas writ where state excluded alibi testimony for violation of state rule requiring listing of alibi witnesses, even though violation was not willful); *United States v. Pearson*, 159 F.3d 480, 483-84 (10th Cir. 1998) (upholding exclusion of alibi witness whose identity defense counsel failed to disclose, despite fact that counsel acted diligently in informing government as soon as defendant made him aware of testimony); *United States v. Bautista*, 145 F.3d 1140, 1151-52 (10th Cir. 1998) ("[T]he right to present defense witnesses is not absolute. A defendant must abide by the rules of evidence and procedure."); *Richmond*, 122 F.3d at 871-72 (noting state trial court properly excluded evidence of victim's prior sexual activity where defendant did not follow procedures set forth in state's rape shield

law); *Russell*, 109 F.3d at 1509-12 (affirming district court's exclusion of witnesses as sanction for defense counsel's violation of mutual witness disclosure agreement).

Finally, *Taylor* makes it clear that Mr. Young is bound by the actions of his lawyer in this situation:

> [t]he argument that the client should not be held responsible for his lawyer's misconduct strikes at the heart of the attorney-client relationship. Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has–and must have–full authority to manage the conduct of the trial. The adversary process could not function effectively if every tactical decision required client approval. Moreover, given the protections afforded by the attorney-client privilege and the fact that extreme cases may involve unscrupulous conduct by both the client and the lawyer, it would be highly impracticable to require an investigation into their relative responsibilities before applying the sanction of preclusion. In responding to discovery, the client has a duty to be candid and forthcoming with the lawyer, and when the lawyer responds, he or she speaks for the client. Putting to one side the exceptional cases in which counsel is ineffective, the client must accept the consequences of the lawyer's [tactical decisions] . . . . Whenever a lawyer makes use of the sword provided by the Compulsory Process Clause, there is some risk that he may wound his own client.

*Taylor*, 484 U.S. at 417-18 (footnote omitted).

For the foregoing reasons, the trial court's exclusion of certain evidence as a sanction for defense counsel's violation of its discovery order and Oklahoma's discovery rules was neither contrary to, nor an unreasonable application of, established federal law. We therefore **AFFIRM** the district court's denial of Mr. Young's petition for a writ of habeas corpus.