UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff-Appellee,<br><br>v.<br><br>BILLY R. MELOT,<br><br>       Defendant-Appellant,<br><br>and<br><br>KATHERINE L. MELOT; KLM TRUST;<br>C.D. PROPERTIES, INC.; MELM<br>TRUST; Q.F. MARKETING, INC.;<br>LEIGH CORPORATION; SUZANNE<br>CORPORATION; MIRROR FARMS,<br>INC.; C.D. EXPRESS, INC.,<br><br>       Defendants. | No. 13-2014<br>(D.C. No. 2:09-CV-00752-JCH-WPL)<br>(D. N.M.) |
| UNITED STATES OF AMERICA,<br><br>       Plaintiff-Appellee,<br><br>v.<br><br>KATHERINE L. MELOT,<br><br>       Defendant-Appellant,<br><br>and<br><br>BILLY R. MELOT; C.D. EXPRESS,<br>INC.; MIRROR FARMS, INC.; C.D.<br>PROPERTIES, INC.; Q.F.<br>MARKETING, INC.; LEIGH | No. 13-2040<br>(D.C. No. 2:09-CV-00752-JCH-WPL)<br>(D. N.M.) |

CORPORATION; KLM TRUST;
SUZANNE CORPORATION; MELM
TRUST,

        Defendants.

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **ANDERSON**, and **MATHESON**, Circuit Judges.

---

Billy R. Melot (Billy) and Katherine L. Melot (Katherine), husband and wife, separately appeal the district court's judgment that reduced to judgment the Government's income tax assessments against them and its fuel-excise tax assessments against Billy, and also authorized the foreclosure of its tax liens and the sale of several real properties to satisfy the liens. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

During the relevant time, the Melots were New Mexico residents. Billy owned and operated several convenience stores that sold gasoline and groceries in New Mexico and Texas. From 1987 through 1993, the stores generated sufficient income to require the Melots to file federal income tax returns and pay taxes. Because New Mexico is a community-property state, one-half of the income tax was attributable to Katherine and the other half to Billy. *See, e.g., United States v. Mitchell*, 403 U.S. 190, 196 (1971) ("[T]he wife is required to report half the community income and . . . the husband is taxable only on the other half."). Neither Billy nor Katherine filed returns or paid taxes for the years in question.

Billy also operated a sole proprietorship known as Melot Oil Company, which bought, sold, blended, and distributed gasoline and fuel to retail customers through the convenience stores. These activities required him to file federal fuel-excise tax returns and to pay excise taxes. But for several quarters from 1989 through 1993, he failed to file any returns or pay taxes.

Denese Baker, an agent with Internal Revenue Service (IRS), began an examination of the Melots in 1992. Because they had not maintained adequate records from which their income tax liabilities could be determined, Agent Baker was required to reconstruct their income. For 1990, she used the bank-deposits method, and for the other years she used records obtained from the Melots themselves and various third parties, including state officials, banks, and suppliers. If records were

unavailable, she extrapolated the income from existing records. As to the fuel-excise taxes, Agent Baker reconstructed those liabilities by examining Billy's recipe for gasoline and his blending practices, along with his use of numerous dummy corporations and aliases in conducting what was essentially a sole proprietorship.

After Agent Baker completed her work in 1999, the IRS sent separate "thirty-day letters" to Billy and Katherine that informed them of the proposed adverse determinations and gave them thirty days to request administrative hearings. No hearings were requested. In January 2000, the IRS sent three notices to Billy and three to Katherine, stating deficiencies for 1987 through 1989, 1990, and 1991 through 1993. The notices explained the taxes and penalties due for each year and how the IRS reconstructed their income. The notices also informed the Melots that they had ninety days to petition the tax court to contest the methods and/or amounts of the assessments. No petitions were filed.

In June 2000, the IRS assessed the income taxes and penalties and sent separate notices of the assessments and demands for payment to Billy and Katherine. When no payments were forthcoming, in October 2001, the IRS filed notices of federal tax liens against the Melots and advised them of their rights to request a collection due process hearing within thirty days. The Melots did not respond until March 2002 when they raised several discredited tax protestor arguments.

In July 2009, the United States sued the Melots to reduce the assessments to judgment and to foreclose its tax liens on their personal and real property.[1]  It later amended its complaint to add KLM Trust, C.D. Properties, Inc., MELM Trust, Q.F. Marketing, Inc., Leigh Corporation, Suzanne Corporation, Mirror Farms, Inc., and C.D. Express, Inc. as defendants and to obtain additional relief, including a finding that these entities held title to real property as the Melots' nominees, and to foreclose its liens and sell the properties.

Eventually the Government moved for summary judgment.  In opposition, the Melots argued, among other things, there were several genuine issues of material fact as to the reliability of Agent Baker's reconstruction of their income, the validity of the liens, and the Government's compliance with several other procedural requirements.  The Melots further argued that the court should delay ruling on the motion until they received all of the documents they had requested in discovery.  While the summary judgment motion was pending, Katherine filed a motion to dismiss based on the innocent-spouse doctrine.

The district court granted summary judgment and reduced the assessments to judgment as follows:  (1) against Billy for more than $18 million in income taxes, penalties, and interest, and nearly $7 million in fuel-excise taxes, penalties, and interest; and (2) against Katherine for more than $9 million in income taxes,

---

[1] As part of the suit, the IRS also sought to reduce a 1996 income tax assessment against Katherine to judgment.  The IRS eventually dismissed this claim.

penalties, and interest.  In a separate order, the court denied Katherine's request for innocent-spouse relief.  Several months later, the magistrate judge appointed a receiver to sell the real properties.

In its order concerning the Melots' motion to alter or amend the judgment, the district court determined *sua sponte* that the Government should re-compute the taxes without consideration of a potential whipsaw.  Originally, the Government calculated Billy's income taxes based on all of the community income and Katherine's taxes based on one-half of the income.  This was done to enable the Government to collect the full amount owed if Katherine were relieved of liability on her share of the community income.  The court, however, rejected this method of income allocation and ordered the Government to re-compute the tax liabilities to eliminate the anti-whipsaw income attribution and also to correct a double-counting error regarding a penalty.[2]  It entered a stay of the sale.  Once the corrections were made, the court entered judgment for income taxes of approximately $8.7 million each against Billy

---

[2] An anti-whipsaw allows the IRS "to assert inconsistent positions and to assess deficiencies against more than one person for the same tax liability if there is an accepted legal basis for each assertion."  *Gerardo v. Comm'r*, 552 F.2d 549, 555 (3d Cir. 1977) (internal quotation marks omitted).  It is grounded in the need "to protect the public fisc and insure against a potential 'whipsaw' effect."  *Id.* (internal quotation marks omitted).  Although this circuit has recognized the propriety of an anti-whipsaw position in certain circumstances, *see, e.g.*, *Wiles v. Comm'r*, 490 F.2d 255, 259 (10th Cir. 1974), we need not resolve whether the district court was correct to disallow the anti-whipsaw decision because the Government does not appeal from that decision.

and Katherine, and reaffirmed its order regarding the excise taxes and liens. It also lifted the stay.[3] These appeals followed.

## II. **ANALYSIS**

### A. *The Amended Complaint*

According to the Melots, the district court erred in allowing the United States to file an amended complaint to add the corporate and trust entities as defendants. We disagree.

The record discloses the Government contacted the Melots' lawyer and obtained his consent to file an amended complaint. Based on that representation, the magistrate judge granted the motion to amend. *See* Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading . . . with the opposing party's written consent."). On appeal, the Melots argue the consent was invalid because they were in the process of firing their lawyer when he gave his consent. The Melots fail to cite any authority, however, to countermand the general rule that a client "is bound by the actions of his lawyer." *Young v. Workman*, 383 F.3d 1233, 1240 (10th Cir. 2004). Their failure to do so or to show the lawyer did not represent them when he consented to the amendment means we will not consider the argument. *See Phillips v. Calhoun*,

---

[3] The district court found there were unresolved issues as to two corporate defendants – Q.F. Marketing, Inc. and C.D. Properties, Inc. The court concluded, however, there was no good reason for delay as to the other defendants, and it issued a final judgment as to those parties and claims under Fed. R. Civ. P. 54(b). The Government later dismissed, without prejudice, its claims against these two defendants.

956 F.2d 949, 953 (10th Cir. 1992) (holding that this court will not consider an argument that "has not been even minimally supported by legal argument or authority").

## B. *Discovery*

In their lengthy opposition to the Government's summary judgment motion, the Melots requested denial of the motion as premature. Fed. R. Civ. P. 56(d). They said the Government had not provided them with the documents they requested concerning the methodology used by Agent Baker to reconstruct their income, and therefore they could not adequately respond.

Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Our review of a decision to deny a motion to amend is "for abuse of discretion. . . . [and] [w]e will not reverse unless the district court's decision to deny discovery exceeded the bounds of the rationally available choices given the facts and the applicable law in the case at hand." *FDIC v. Arciero*, 741 F.3d 1111, 1116 (10th Cir. 2013) (citation, brackets and internal quotation marks omitted).

In December 2010, the Government sent documents to the Melots. The scheduling order provided that discovery motions were due no later than July 7,

2011.  At no time between December 2010 and July 11, 2011, when the Government filed its motion for summary judgment, did the Melots claim that the Government had not complied with its discovery obligations.

Moreover, the Melots presented detailed arguments concerning Agent Baker's methodology and calculations, using various documents, most of which were provided to them in discovery.  Also, they have not shown the Government failed to comply with discovery.  The Government produced two boxes of documents that included the IRS's administrative and collection files for 1987 through 1993, along with Agent Baker's work papers and supporting materials.

More than two months after the Melots filed their response in opposition to summary judgment, they filed a motion to compel, which the magistrate judge denied.  The district court overruled the Melots' objections, in part, because the Government "clearly explained the four instances in which it has already provided the same or substantially similar material to the [Melots]."  R. Vol. 5 at 120.  The district court did not abuse its discretion.

## C. *Summary Judgment*

"We review de novo the grant of summary judgment to determine whether any genuine issues of material fact were in dispute and, if not, whether the district court correctly applied the substantive law at issue."  *Zurich Am. Ins. Co. v. O'Hara Reg'l Ctr. For Rehab.*, 529 F.3d 916, 920 (10th Cir. 2008).  Summary judgment "shall" be granted when "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In applying this standard, we view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party. *Zurich*, 529 F.3d at 920 (internal quotation marks omitted).

The Melots advance several arguments of error concerning the district court's order on summary judgment. We reject them because they lack factual or legal support, or both.

### 1. **Zero Income Tax Returns**

The Melots argue that because Katherine filed tax returns for 1987 through 1993, the IRS did not need to reconstruct their income and file substitute returns. We disagree. Katherine filed "zero income tax returns," which reported her income as zero. These returns do not qualify as tax returns. *See United States v. Rickman*, 638 F.2d 182, 184 (10th Cir. 1980) (holding that a document that does not provide information from which a tax can be computed is not a return).

### 2. **Due Process Collection Hearing**

The Melots' failure to pay the assessments created a tax lien on all of their property in favor of the United States. To perfect the liens, the Government filed notices in the appropriate counties and informed the Melots of the filings and their right to request a due process collection hearing within thirty days. The Melots never asked for a hearing; instead, they responded well past the thirty-day deadline with arguments. They now assert that because the IRS did not schedule a hearing, they

- 10 -

were "lead[] . . . to believe that their challenge was accepted as true." Billy R. Melot Opening Br. (13-2014) at 15; Katherine L. Melot Opening Br. (13-2040) at 15.

The Melots seem to suggest the IRS's failure to schedule a hearing precluded summary judgment. But, they never explain why the IRS was obligated to schedule a hearing in response to an untimely protest letter. In short, the Melots' position lacks any merit. *See Phillips,* 956 F.2d at 953.

3. **Additional Procedural Defects**

The Melots additional arguments about procedural errors lack factual or legal support. First, they claim never receiving the "thirty-day letters" from the IRS, but they did. R. Vol. 4 at 268-69, 274-75. Moreover, the IRS is not required to send them because "[d]ue process does not require a hearing at the initial state or at any particular point of an administrative proceeding." *Rosenberg v. Comm'r*, 450 F.2d 529, 533 (10th Cir. 1971).

The Melots next argue they never received the notices of deficiencies that triggered their obligation to petition the tax court within ninety days for a redetermination of the deficiencies. But actual receipt of a "ninety-day letter" is not required. Instead, notice is sufficient if it is sent to the taxpayer's last known address, which was done in this case. 26 U.S.C. § 6212(b)(1); *Armstrong v. Comm'r*, 15 F.3d 970, 973 (10th Cir. 1994).

The Melots also argue the IRS should not have mailed them the notices of assessments and demands for payments on the same day as the assessments were

made.  There is no merit to this argument because 26 U.S.C. § 6303(a) allows the IRS to do this.

4. **Reconstruction of Income**

The Melots argue there were several genuine disputes of material fact regarding Agent Baker's methodology to reconstruct their income.  They did not, however, present sufficient evidence to overcome the presumption the assessments were correct.

"An 'assessment' amounts to an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes.  It is well established in the tax law that an assessment is entitled to a legal presumption of correctness—a presumption that can help the Government prove its case against a taxpayer in court." *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002).  In an IRS collection suit, "the statutory notice of deficiency is presumed correct; the burden rests on the taxpayer to establish that the determination of income is erroneous." *United States v. Gosnell*, 961 F.2d 1518, 1520 (10th Cir. 1992) (internal quotation marks omitted).  The presumption continues when, as here, the deficiencies ripen into assessments after the taxpayer fails to file a petition challenging the deficiencies. *See United States v. Mullin*, 948 F.2d 1188, 1192 (10th Cir. 1991).  Only "if the taxpayer proves that the IRS assessment is arbitrary and unsupportable, [does] the burden . . . shift[] back to the IRS to prove what the correct amount of tax should be." *Dye v. United States*, 121 F.3d 1399, 1408 n.10 (10th Cir. 1997).

Summary judgment was proper because the Melots failed to produce any evidence to overcome the presumption of correctness. For example, they presented no evidence to support their argument that Agent Baker used incorrect profit margins and figures from large corporations like Walmart to reconstruct their income. To the contrary, Agent Baker explained in her affidavit that, except for 1990 when she used the bank-deposits method, she reconstructed the Melots' income by using records of their actual purchases and sales – not by using profit margins or records for other businesses. Also, despite their contention otherwise, the Government provided the Melots with the documents Agent Baker used to reconstruct their income.

5. **Temporary Release of Liens**

The Melots argue that because the IRS mistakenly filed certificates to release the tax liens, the liens are invalid and unenforceable. We disagree. When, as here, the IRS determines that a lien has been released by mistake, it can revoke the release and reinstate the lien, 26 U.S.C. § 6325(f)(2), which it did.

6. **Federal Fuel-Excise Taxes**

Billy argues he does not owe any federal fuel-excise taxes because the State of Texas was unable to obtain a criminal conviction against him for failure to pay state fuel-excise taxes. This argument lacks merit for two reasons. First, an unsuccessful criminal prosecution does not mean Billy no longer owes the unpaid state taxes. Second, even if Billy were to satisfy his state fuel tax obligations, he is separately liable for federal fuel-excise taxes. *See* 26 U.S.C. § 4081.

- 13 -

7. **KLM Trust**

The Melots contest foreclosure on the property held by the KLM Trust. Because the KLM Trust did not file a notice of appeal, we lack jurisdiction to consider whether the district court erred in holding that the IRS could foreclose on the Trust's property. *See Bowles v. Russell*, 551 U.S. 205, 214 (2007) ("[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement.").

8. **The Order to Re-Calculate the Judgment**

In its order concerning the Melots' motion to alter or amend the judgment, the district court determined sua sponte the Government should re-compute the income taxes owed by Billy and Katherine individually. In particular, the court ordered the Government to abandon the anti-whipsaw position that it had taken in computing Billy's taxes and to correct a double-counting error regarding a penalty. The Government submitted new calculations. After the Melots filed their objections, the court entered a final judgment.

The Melots argue they were entitled to a trial because the district court ordered the Government to recalculate the taxes without the anti-whipsaw tax attribution. According to the Melots, this "created genuine issue(s) requiring the District Court to vacate it[]s [summary judgment order] and set the matter for [t]rial." Billy R. Melot Opening Br. (13-2014) at 28; Katherine L. Melot Opening Br. (13-2040) at 28. Once again, the Melots have failed to identify any genuine dispute of material fact that

- 14 -

should have precluded summary judgment. Instead, they simply repeat their arguments about Agent Baker's methodology to reconstruct their income.

9**. Recalculation of Income Taxes and Penalties**

The Melots argue that the IRS was required to recompute their taxes by dividing the full amount of the community income by two. We do not consider an argument when, as here, it "has not been even minimally supported by legal argument or authority." *Phillips*, 956 F.2d at 953. And although the Melots contest the IRS's calculation of penalties and interest, they fail to identify any specific flaws in the calculations. Finally, they present no evidence to support their contention they did not receive full credit for payments received from a levy issued to a business that owed the Melots money.

10. **Double Recovery**

The Melots argue that because Billy must pay restitution to the United States as the victim in his criminal case, an adverse judgment for the Government in this case would wrongly require them to pay the same taxes to the same party twice. But 18 U.S.C. § 3664(j)(2) resolves this issue. It provides: "Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in – [] any Federal civil proceeding."

## D. *Innocent Spouse*

Katherine argues the district court should have granted her relief as an innocent spouse. The district court rejected her request under 26 U.S.C. § 66(c) because she knew or had reason to know of the community income.

Because New Mexico is a community property state, Katherine is liable for the taxes due on one-half of the income of the marital community. *See Mitchell*, 403 U.S. at 196. It does not matter that Katherine was a stay-at-home mother, as she argues, or that she was not criminally charged along with her husband for any tax-related offenses.

In response to the Government's motion for summary judgment, Katherine admitted she and Billy operated several businesses during the relevant years, and she was also aware that Billy operated the Melot Oil Company. Additionally, the Government produced evidence that Katherine participated in these businesses by writing checks, making cash deposits, obtaining cashiers' checks, and arranging wire transfers. By contrast, Katherine offered nothing more than conclusory denials that she had knowledge of any income or business affairs. Because the evidence showed Katherine knew or had reason to know of the community income,[4] the district court properly concluded that she "has not met her burden of establishing that she meets

---

[4] Katherine also argued it was inequitable to attribute the community income to her, which is one of four criteria under 26 U.S.C. § 66(c)(4). We do not consider this issue because she failed to establish the third criterion, lack of knowledge of the community property income.

each element of the defense and [is therefore] not entitled to innocent spouse relief under 26 U.S.C. § 66." R. Vol. 5 at 300.

### E. **The Receiver**

In conjunction with its memorandum order for summary judgment, the district court entered a judgment that the real property be sold unopposed or through a receiver. The magistrate judge appointed Bobby Shaw as receiver. A few months later, the district court set aside the judgment of sale pending the Government's recalculation of the income taxes without its anti-whipsaw position. It also ordered a stay of the sale. When the Government's new computations were complete, the court issued a final judgment that included the sale and lifted the stay. The Melots' argument there is no order of sale is plainly wrong.

The Melots further argue that Mr. Shaw should be removed as receiver because he serves as a city planner for Hobbs, New Mexico. They rely on 28 U.S.C. § 958, which prohibits a person employed by the federal government from being appointed a receiver in a federal court case. Mr. Shaw is employed by a local government not the federal government. As such, the argument lacks merit.

### III. **CONCLUSION**

The judgment of the district court is affirmed. We deny Billy's motion to proceed in forma pauperis in Appeal No. 13-2014. We deny Katherine's motion to proceed in forma pauperis in Appeal No. 13-2040.

ENTERED FOR THE COURT,


Scott M. Matheson, Jr.
Circuit Judge