FILED
United States Court of Appeals
Tenth Circuit

August 16, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ROBERTO MIRAMONTES ROMAN,

    Defendant - Appellant.

No. 17-4084
(D.C. No. 2:13-CR-00602-DN-DBP-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **EBEL**, and **MORITZ**, Circuit Judges.
_____

Roberto Roman appeals his convictions for intentionally killing a law-enforcement officer and for several drug and firearm offenses. On appeal, Roman advances two arguments for reversal. First, he asserts that the district court erred by excluding evidence of his prior state-court acquittal. Next, he challenges the sufficiency of the evidence supporting his conviction for carrying a gun in furtherance of a drug-trafficking crime.[1]

_____

[*] This order and judgment isn't binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

[1] Roman also contends that the double-jeopardy clause barred his underlying federal prosecution. But as we discuss below, Roman concedes we are constrained to reject this argument; he raises it only to preserve the issue for Supreme Court review.

Contrary to Roman's assertions, the district court neither violated his Sixth Amendment right to present a defense nor abused its discretion by excluding evidence of Roman's prior state-court acquittal; that evidence wasn't material, and any probative value it might have had was substantially outweighed by the risk that it would unfairly prejudice the government, confuse the issues, and mislead the jury. Moreover, there was sufficient evidence for a rational jury to find Roman guilty of carrying a firearm in furtherance of a drug-trafficking crime. Accordingly, we affirm.

## Background

In January 2010, Roman drove to Ruben Chavez' residence with some methamphetamine, a Bersa pistol, and a loaded AK-47 rifle. When he arrived, he took the drugs and guns inside with him. Roman and Chavez then smoked methamphetamine, drank alcoholic beverages, watched movies, and used social media. Roman also showed the AK-47 to Chavez and allowed him to hold it. About six hours later, Roman left to sell methamphetamine to Ryan Greathouse. He again took the guns and drugs with him and put the AK-47 in his vehicle's trunk.

On the way to meet Greathouse, Roman pulled over and took the AK-47 out of the trunk and put it in the vehicle. When Roman arrived at the meeting place, Greathouse got into Roman's passenger seat. Roman drove a short distance and then sold 3.5 grams of methamphetamine to Greathouse. Greathouse paid Roman $150. He owed Roman more than that, but he explained that he would pay Roman after he collected some money later that evening.

Roman and Greathouse smoked methamphetamine and then drove to collect the money Greathouse owed Roman. On the way, they passed a marked sheriff's vehicle, which began following them. The sheriff's vehicle ultimately activated its lights and siren, and Roman pulled over. Deputy Josie Greathouse Fox—who, as happenstance would have it, was Greathouse's sister—got out of the sheriff's vehicle and approached Roman's driver-side door. As she did so, Roman rolled down the window. And as Fox neared the vehicle, she was fatally shot through the driver's window. Roman and Greathouse immediately fled the scene.

Local officers eventually found Roman hiding in a shed in Beaver, Utah and arrested him. During an interview with local investigators, he confessed to killing Fox. In the midst of his confession, he demonstrated at least 12 times how "he reached down and grabbed the AK[-]47, raised it up over his left hand or left shoulder, poked it out [of the window] just a little bit . . . and pulled the trigger." R. vol. 2, 362.

Roman was tried in state court for several offenses, including Fox's murder.[2] Despite Roman's earlier confession, he testified that Greathouse killed Fox. The state-court jury acquitted Roman of Fox's murder. The United States then brought its own charges against Roman, including intentionally killing a local law-enforcement officer in violation of 21 U.S.C. § 848(e)(1)(B) and possessing a firearm in

---

[2] Greathouse wasn't charged in connection with these events; he died of a drug overdose four months after Roman's arrest.

furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). This time, the jury convicted Roman on all counts. He appeals.

## Analysis

### I.   The State-Court Acquittal

Roman first argues that the district court erred by excluding evidence of his state-court acquittal. His challenge turns on certain facts related to the government's investigation of the vehicle he was driving on the night of Fox's murder, so we begin by detailing those facts.

The day after Fox's murder, Douglas Squire, a forensic supervisor for the Utah County Sheriff's Office, investigated and searched Roman's vehicle. He found two bullet casings on the right side of the back seat and one casing on the vehicle's front passenger seat. Critically, he didn't notice any smudge marks on the vehicle's headliner—the fabric on the interior roof of the vehicle—above the driver's seat.

During Roman's state-court trial, Roman testified that Greathouse shot Fox. To test the veracity of Roman's story, state officials performed a preliminary reconstruction of Fox's murder. In doing so, they took multiple photographs of the reconstruction process.

After Roman's state-court acquittal, the government arranged to conduct its own reconstruction of Fox's murder. In preparation, Squire again investigated Roman's vehicle and took gunshot residue samples. This time, he noticed two smudge marks on the vehicle's headliner above the driver's seat. ATF Agent Gregory Klees then performed the reconstruction. He concluded that the individual sitting in

4

the driver's seat fired the AK-47. In reaching this conclusion, Klees relied on three factors: trajectory alignment, cartridge-case-ejection analysis, and the smudge marks on the headliner above the driver's seat. The smudge marks, according to Klees, were "the most significant piece of evidence." R. vol. 2, 870.

Roman didn't seek to suppress the smudge marks. But he did cite them as a basis for arguing, in a pretrial motion, that the district court should allow him to present evidence of his state-court acquittal to show Squire's motive to fabricate the smudge marks. Specifically, Roman pointed out that the smudge marks didn't appear in any of the photographs that state officials took during their preliminary reconstruction. So he reasoned that to the extent the smudge marks were visible in the photographs taken by the government during its subsequent reconstruction, Squire must have fabricated them.[3] And he argued that his state-court acquittal gave Squire a strong motive for doing so.

The district court rejected Roman's argument and excluded evidence of Roman's state-court acquittal. Roman challenges this ruling on two grounds. First, he contends that the district court's decision violated his Sixth Amendment right to present a defense. Second, he asserts that the district court abused its discretion in

---

[3] The government argues that proof of the smudge marks existed prior to Roman's state-court trial. Specifically, it argues the photographs taken during the state's preliminary reconstruction show the smudge marks on the headliner above the driver's seat. But even assuming the smudge marks aren't visible in these photographs, we ultimately conclude, for the reasons discussed below, that Roman isn't entitled to relief on this issue. So we need not resolve the parties' dispute on this point.

excluding evidence of the acquittal under Federal Rule of Evidence 403. For the reasons discussed below, we reject both of Roman's arguments.

## A. Constitutional Violation

Roman first argues that the district court violated his constitutional right to present a defense when it excluded evidence of his state-court acquittal. We review de novo whether a constitutional violation has occurred. *See United States v. Markey*, 393 F.3d 1132, 1135 (10th Cir. 2004).

Criminal defendants have a constitutional right to present evidence in support of their defense. *See* U.S. Const. amend. VI. But this right isn't unfettered. *See Markey*, 393 F.3d at 1135. In particular, "a criminal defendant does not have a constitutional right to present evidence that is not relevant and not material to his [or her] defense." *United States v. Solomon*, 399 F.3d 1231, 1239 (10th Cir. 2005).

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and that "fact is of consequence in determining the action." Fed. R. Evid. 401. And evidence is material if its absence "rendered [the] trial fundamentally unfair." *Solomon*, 399 F.3d at 1239. "In other words, 'material evidence is that which is exculpatory—evidence that if admitted would create reasonable doubt that did not exist without the evidence.'" *Young v. Workman*, 383 F.3d 1233, 1238 (10th Cir. 2004) (quoting *Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir. 1997)).

Here, Roman first contends that his state-court acquittal was relevant for the limited purpose of showing Squire's motive to fabricate the smudge marks. For

purposes of this appeal, we assume Roman is correct.[4] But we disagree with Roman's subsequent assertion that the acquittal was material.

That's because even if the district court had admitted evidence of the acquittal and the jury disregarded the smudge marks as a result, the fact remains that the other evidence before the jury overwhelmingly indicated that Roman was guilty of Fox's murder. *See Young*, 383 F.3d at 1238 (concluding that excluded evidence wasn't material in absence of any indication it "would have created reasonable doubt had it been introduced").

In particular, the jury watched Roman's videotaped confession, during which he demonstrated no fewer than 12 times how he held the AK-47 and fired it at Fox. And the jury also heard evidence corroborating nearly every aspect of this confession. For example, Roman told investigators precisely where to find the AK-47 that he discarded after the murder, and this information proved accurate. Similarly, Roman said (1) he called Chavez after the murder, (2) Chavez picked up him up in an orange Corvette, (3) Roman removed the rear license plate from the vehicle he had been driving, and (4) they drove away in the Corvette. Chavez' testimony corroborated this timeline and information. Moreover, the jury heard evidence that

---

[4] We also assume that this evidence wasn't inadmissible hearsay. Typically, "a judgment of acquittal is hearsay." *United States v. Sutton*, 732 F.2d 1483, 1493 (10th Cir. 1984). But according to Roman, this general rule doesn't apply here because he didn't offer the judgment of acquittal for the truth of the matter asserted—i.e., to show that a prior jury acquitted him. Instead, he says he offered the acquittal to show Squire's motive for fabricating evidence of his guilt. *See United States v. Lewis*, 594 F.3d 1270, 1282 (10th Cir. 2010) (defining hearsay, in relevant part, as a statement offered to prove truth of matter asserted). For purposes of this appeal, we assume but do not decide that Roman is correct.

Roman confessed to Fox's murder a second time, to his fellow inmate Jason Corey. Finally, in addition to his confessions and the substantial corroborating evidence, the jury heard testimony that Roman twice suggested he would rather shoot a police officer than go to jail. Most notably, during his interview with local investigators, Roman told them that approximately 20 minutes before Fox's death, he saw a vehicle approaching the vehicle in which he and Greathouse were traveling and told Greathouse that if the vehicle contained police officers, it wasn't "going to be good for them." R. vol. 2, 1290. More specifically, Roman indicated that if the vehicle contained police officers, he "would shoot them." *Id.* Similarly, a few days before Fox' death, while driving with his friend Sarah Hatch, Roman passed a police officer and told Hatch that "he would do what he had to do to not go to jail." *Id.* at 1189.

In light of this overwhelming evidence of Roman's guilt, we conclude the evidence of Roman's state-court acquittal was not material. Therefore, its absence did not render his trial fundamentally unfair, and the district court did not violate Roman's constitutional rights by excluding it. *See Solomon*, 399 F.3d at 1239.

**B.    Evidentiary Violation**

Even assuming the district court didn't violate Roman's Sixth Amendment right to present a defense by excluding evidence of the state-court acquittal, Roman argues that the district court nevertheless erred in excluding the evidence because (1) it was relevant and (2) its probative value wasn't substantially outweighed by the potential danger of unfair prejudice. *See* Fed. R. Evid. 403. The district court disagreed. It found that other evidence already established Squire's motive to

8

fabricate the smudge marks. And it concluded that the state-court acquittal would "create[] a substantial risk of unfair prejudice to the government." R. vol. 1, 121. We review the district court's order excluding evidence under Rule 403 for abuse of discretion.[5] *See Markey*, 393 F.3d at 1134–35.

As discussed above, evidence is relevant if it tends "to make a fact [of consequence] more or less probable." Fed. R. Evid. 401. And relevant evidence is generally admissible. *Id.* 402. But a district court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* 403.

Roman first contends that his state-court acquittal was relevant for the limited purpose of showing Squire's motive to fabricate the smudge marks. For purposes of evaluating this argument, we again assume the relevance of Roman's state-court acquittal. But Roman further argues that the acquittal's probative value wasn't substantially outweighed by the risk of unfair prejudice because an appropriate limiting instruction would have mitigated that risk. On this point, we disagree.

---

[5] Citing *United States v. McVeigh*, 153 F.3d 1166 (10th Cir. 1998), Roman urges us to review the district court's Rule 403 determination de novo. But in *McVeigh*, we conducted de novo review because the record included a colloquy "that shed[] considerable light on how the district court viewed the evidence," even though the district court "failed to make an explicit record of its balancing of the Rule 403 factors." *Id.* at 1189. In contrast, the district court explicitly balanced the Rule 403 factors here. Thus, Roman's reliance on *McVeigh* is misplaced, and we reject his argument for de novo review.

It's simply unrealistic to suggest that this jury, tasked with deciding whether Roman was guilty of murdering a police officer, could have set aside the significance of Roman's state-court acquittal for *the same murder* and considered that acquittal solely as evidence of the motive to fabricate. As such, the district court didn't abuse its discretion in concluding that a limiting instruction wouldn't have sufficiently mitigated the risks inherent in admitting this evidence. *See United States v. De La Rosa*, 171 F.3d 215, 219–20 (5th Cir. 1999) (explaining that "evidence of a prior acquittal will often be excludable . . . because its probative value likely will be 'substantially outweighed by the danger of prejudice, confusion of the issues, or misleading the jury'" (quoting Fed. R. Evid. 403)); *United States v. Doles*, 335 F. App'x 736, 738–39 (10th Cir. 2009) (unpublished) (concluding that district court didn't abuse its discretion by excluding, for purposes of federal trial on charges of knowingly and unlawfully selling drug paraphernalia, evidence that defendant was acquitted in state court of similar charges; noting that "risk of confusion of the issues was high").

Our conclusion is bolstered by Roman's failure to cite a single case in which we—or any of our sibling circuits—have concluded that a district court abused its discretion by excluding evidence of a defendant's prior state-court acquittal for the same conduct at issue in a subsequent federal trial. Roman does cite *Borunda v. Richmond*, 885 F.2d 1384 (9th Cir. 1988). There, the district court admitted evidence of a prior acquittal "for the purpose of showing," in a subsequent *civil* proceeding, "that the plaintiffs incurred damages in the form of attorneys' fees in successfully

10

defending against the state criminal charges, and that the fees charged were reasonable in light of the success achieved." *Id.* at 1388. The Ninth Circuit reluctantly affirmed, noting that although it "would have been inclined to exclude the evidence of acquittal[]," the district court didn't abuse its discretion in admitting it. *Id.* at 1389.

But *Borunda* doesn't stand for the proposition that a district court necessarily abuses its discretion in refusing to admit evidence of an acquittal when it's offered to prove something other than a defendant's innocence. On the contrary, *Borunda* illustrates the wide latitude that district courts enjoy in determining whether evidence is admissible under Rule 403. Because the district court in this case didn't exceed that wide latitude in excluding evidence of Roman's state-court acquittal, it didn't abuse its discretion.

## II. Sufficiency of the Evidence

Next, Roman challenges the sufficiency of the evidence supporting his conviction for possessing a firearm in furtherance of a drug-trafficking crime. We typically review the sufficiency of the evidence de novo. *See United States v. Wilson*, 244 F.3d 1208, 1219 (10th Cir. 2001). But as the government points out, Roman failed to renew his motion for a judgment of acquittal after the close of evidence, so our review is limited to plain error. *See United States v. Rufai*, 732 F.3d 1175, 1189 (10th Cir. 2013) (explaining that to succeed on plain-error review, appellant must establish (1) that error occurred, (2) that it was plain, (3) that it affected his or her substantial rights, and (4) that it "seriously affect[ed] the fairness, integrity, or public

11

reputation of judicial proceedings" (quoting *United States v. Story*, 635 F.3d 1241, 1244 (10th Cir. 2011))).

Of course, as Roman points out in reply, this is mostly a distinction without a difference: "review under the plain[-]error standard . . . and a review of sufficiency of the evidence usually amount to largely the same exercise." *Id.* (quoting *United States v. Duran*, 133 F.3d 1324, 1335 n.9 (10th Cir. 1998)). That's because the first three elements of plain-error review are necessarily satisfied when there's insufficient evidence of guilt. *Id.* And "it is only in a rare case when the absence of sufficient evidence will not meet the fourth factor of plain[-]error review." *Id.*

Under either standard, we won't "weigh evidence or consider credibility of witnesses." *Id.* at 1188 (quoting *United States v. Renteria*, 720 F.3d 1245, 1253 (10th Cir. 2013)). Further, we must draw all reasonable inferences in the light most favorable to the government and ask only whether "a reasonable jury could find [the defendant] guilty beyond a reasonable doubt." *Id.* (alteration in original) (quoting *United States v. Kaufman*, 546 F.3d 1242, 1263 (10th Cir. 2008)).[6]

---

[6] The government urges us to find Roman's sufficiency challenge waived because Roman failed to argue for plain error in his opening brief. The failure to address plain error in an opening brief typically "marks the end of the road for an argument" not raised in district court. *United States v. Lamirand*, 669 F.3d 1091, 1099 n.7 (10th Cir. 2012) (quoting *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011)). But Roman fully argued for plain error in his reply brief. *See United States v. Courtney*, 816 F.3d 681, 684 (10th Cir. 2016) (reviewing for plain error where appellant "argued plain error fully in his reply brief"). And the government also sought and received permission to file a surreply brief. As such, the issue has been fully briefed, and we therefore opt to address it. *See United States v. Montgomery*, 550 F.3d 1229, 1231 n.1 (10th Cir. 2008) (exercising discretion to ignore waiver because "the issue ha[d] been briefed fully and argued by the parties").

To convict Roman under § 924(c)(1)(A), the government was required to prove beyond a reasonable doubt that Roman (1) distributed methamphetamine to Chavez; (2) used or carried a firearm; and (3) did so during and in relation to that distribution. *See United States v. Nicholson*, 983 F.2d 983, 990 (10th Cir. 1993). Roman doesn't dispute that he distributed methamphetamine to Chavez. Nor does he dispute that he used or carried a firearm as he did so. Instead, he argues only that the government failed to prove that he used or carried the firearm "in relation to" the distribution of methamphetamine.[7] § 924(c)(1)(A).

Although not without boundaries, "[t]he phrase 'in relation to' is expansive." *Smith v. United States*, 508 U.S. 223, 237 (1993). Critically, a person carries a firearm "in relation to" a drug-trafficking offense if the firearm either facilitates or has "the *potential* of facilitating" the drug-trafficking crime. *United States v. Brown*, 400 F.3d 1242, 1250 (10th Cir. 2005) (emphasis added) (quoting *Smith*, 508 U.S. at 238). For instance,"[o]ne recognized theory that explains how a gun facilitates a drug[-]trafficking crime is that the gun deters interference with the crime." *Id.* at 1251 (quoting *United States v. Radcliff*, 331 F.3d 1153, 1159 (10th Cir. 2003)).

Roman contends the evidence was insufficient to show that he carried the firearm "in relation to" his distribution of drugs to Chavez. § 924(c)(1)(A). In support, he points out that although he carried the AK-47 from his vehicle to Chavez' residence, the government didn't establish the distance between the residence and the

___

[7] In his opening brief, Roman also argued that there was insufficient evidence to prove he carried the AK-47 *during* the distribution to Chavez. But because Roman explicitly withdrew this argument in his reply brief, we decline to consider it.

location where he parked. Thus, he maintains there was no evidence that he used the weapon for protection or deterrence during his walk from his vehicle to the house. Roman also points out that the government presented no evidence that the police or anyone else "would be happening by [Chavez'] living room." Aplt. Br. 56. Thus, he again suggests the government failed to present evidence that he needed the weapon for protection or deterrence while he was in Chavez' living room.

But Roman cites no authority, and we are aware of none, indicating that the government must identify a specific threat in order to establish that a gun was carried to facilitate or potentially facilitate a drug-trafficking crime. Instead, case law supports the jury's conclusion that Roman carried the loaded firearm in his vehicle and then into Chavez' house to facilitate or potentially facilitate his distribution of methamphetamine. *See United States v. King*, 632 F.3d 646, 656 (10th Cir. 2011) (stating that loaded firearms are "better suited" to protect drugs than unloaded firearms); *United States v. Winder*, 557 F.3d 1129, 1139 (10th Cir. 2009) (explaining that carrying firearm from vehicle was "strong evidence of [d]efendant's willingness to carry a gun to 'deter interference' with his drug[-]dealing pursuits" (quoting *United States v. Banks*, 451 F.3d 721, 726 (10th Cir. 2006))); *United States v. Lott*, 310 F.3d 1231, 1248 (10th Cir. 2002) (concluding that purpose of loaded firearm next to drug paraphernalia "was to provide defense or deterrence in furtherance of" drug-trafficking crime). Moreover, ATF Agent Jeff Bryan testified regarding the "very close connection" between firearms and drug distribution and explained that firearms protect drug distributors from theft and from law enforcement. R. vol. 2, 642.

14

Nevertheless, Roman asserts the jury couldn't reasonably infer here that Roman brought the gun for protection or deterrence purposes because the evidence showed that (1) Chavez didn't pay for the methamphetamine, (2) he and Chavez are friends, (3) he and Chavez have a common interest in firearms, and (4) he allowed Chavez to handle the AK-47. Roman suggests that this evidence established only that he brought the AK-47 inside so he could show it to a fellow gun enthusiast. But even assuming that's the case, it doesn't undermine the gun's *potential* to facilitate the distribution. And to support a conviction under § 924(c)(1)(A), "[t]here is no requirement" that the gun's potential to facilitate the drug-trafficking crime must "be the sole reason for the possession of the gun." *Radcliff*, 331 F.3d at 1158–59

Under these circumstances, we conclude the government presented sufficient evidence to permit the jury to find that Roman possessed the loaded AK-47 in order to facilitate or potentially facilitate his distribution of methamphetamine to Chavez. Thus, we affirm his § 924(c)(1)(A) conviction.

## III.    Double Jeopardy

Finally, Roman asserts that in light of the earlier state-court acquittal, the subsequent federal prosecution violated the double-jeopardy clause. But he concedes that this challenge is foreclosed by the Supreme Court's longstanding dual-sovereignty rule.[8] *See, e.g.*, *Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863, 1870

---

[8] We recognize that the Supreme Court has granted certiorari to consider the constitutionality of the dual-sovereignty rule. *See United States v. Gamble*, 694 F. App'x 750 (11th Cir. 2017) (unpublished), *petition for cert. granted* June 28, 2018 (No. 17-646). But that doesn't alter our obligation to apply the Court's current

15

(2016) (explaining that criminal defendant may be prosecuted twice for same offense so long as prosecutions are "brought by different sovereigns"); *Bartkus v. Illinois*, 359 U.S. 121 (1959) (holding that acquittal in state court didn't bar prosecution by federal government for substantially same crime). Indeed, he raises this argument only "to preserve it for review by the Supreme Court." Aplt. Br. 64.

As Roman acknowledges, we must follow the Supreme Court's dual-sovereignty holdings. *See United States v. Barrett*, 496 F.3d 1079, 1119 (10th Cir. 2007). We therefore reject his double-jeopardy argument.

### Conclusion

Because evidence of the state-court acquittal wasn't material, the district court didn't violate Roman's constitutional rights by excluding it. Nor did the district court's decision amount to an abuse of discretion; any probative value the acquittal might have had was outweighed by the risk that it would unfairly prejudice the government, confuse the issues, and mislead the jury. Moreover, there was sufficient evidence for the jury to find that Roman possessed the AK-47 in relation to his act of

---

precedent. *See United States v. Lopez-Velasquez*, 526 F.3d 804, 808 n.1 (5th Cir. 2008) (stating that precedent is binding "even when the Supreme Court grants certiorari on an issue").

16

distributing drugs to Chavez. Finally, Supreme Court precedent forecloses Roman's double-jeopardy argument. Accordingly, we affirm.

Entered for the Court

Nancy L. Moritz
Circuit Judge